**UNITED STATES of America**

v.

**Frank GORHAM, Jr., Appellant.**

**UNITED STATES of America**

v.

**Otis D. WILKERSON, a/k/a Robert N. Jones, a/k/a James Burgess, Appellant.**

**Nos. 74–1611, 74–1613.**

United States Court of Appeals, District of Columbia Circuit.

April 29, 1976.

Rehearing En Banc Denied May 27, 1976.

---

Jack L. Lipson, Washington, D. C. (appointed by this court), for appellants.

Paul N. Murphy, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, John O'B. Clarke, Jr., and Lester B. Seidel, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and MacKINNON and ROBB, Circuit Judges.

### ORDER

On consideration of appellants' petition for rehearing, it is

ORDERED by the court that the aforesaid petition for rehearing is denied, for the reasons stated in the following supplemental opinion filed this date.

MacKINNON, Circuit Judge:

In support of their petition for rehearing and suggestion for *en banc* consideration, appellants Gorham and Wilkerson [a/k/a Jones] raise two points. We will first discuss their present claim that they were improperly denied a severance.

1. Appellants' petition alleges

The Court is also in error in stating that the motion to sever was not made until *after* the Bridgeman (*i. e.,* Seegers) testimony. In fact, pretrial motions for severance were made orally on March 14, 1974 by Gorham and orally and in writing by Jones the same day. (*See* Transcript of proceedings, *United States v. Burgin,* Nos. 852–73 and 981–73 at p. 67) Counsel is advised that the motions were denied without record entry.

Appellants' Petition for Rehearing at 10. This brings to our attention a motion for severance made on March 14, 1974 and discussed in the transcript of the Burgin case,[1] to which appellants referred us. This mo-

---

1. Burgin was tried at the same trial with Gorham, Jones, Ewing and Fields.

tion was made in a hearing before Judge Gasch at which counsel for Gorham and Jones were also present. At that time Attorney Sheehy, representing defendant Jones, moved for a severance and in the following colloquy set forth the legal basis he was presenting to the court to induce it to grant his motion:

Mr. Sheehy: Lastly, Your Honor, I would be asking for severance, and I would be asking for a severance, particularly from Mr. Wright's client [Mr. Burgin] who according to the indictment, the way the indictment is drawn right now, we do not have any indication that he was *involved in a so-called "planned conspiracy" of a jail break as such.* As a result, Your Honor, I do not believe that he [Wilkerson, a/k/a Jones] is a proper defendant who should be tried in this particular case.

In addition, I would move for severance.

THE COURT: You are talking about Mr. Wright's client [Burgin]?

Mr. Sheehy: Yes, sir, Mr. Wright's client. I am talking about my client, and I am giving Mr. Wright's client as an example of somebody who is not involved in the conspiracy as such.

Tr. March 14, 1974, at 67 (emphasis added). What counsel's statement indicated he sought by this motion was a severance for Jones (and Gorham) from Burgin on the basic claim that Burgin was not charged by the indictment with being "involved in a so-called 'planned conspiracy' of a jail break as such." (We also give Gorham the benefit of this motion). Jones' counsel was contending that Jones and Burgin should not be tried together because they were not charged with having *planned* the conspiracy together. However, those who join a conspiracy after it is formed may be charged jointly with those who originally plan it. *United States v. Bridgeman,* 173 U.S.App. D.C. 150, 158–159, 523 F.2d 1099, 1107–08 (1975). Since Burgin joined the conspiracy after it was formed, Judge Gasch was within the law in denying severance (although a

wide discretion is vested in the judge on such motions).

2. In support of their present contention that their trial should have been severed from that of the women (Ewing and Fields), appellants also rely on their pre-trial motions for severance and cite the above-quoted colloquy from page 67 of the March 14, 1974 transcript. That quotation does not support their arguments because the basis counsel stated in support of the motion is not founded in any way upon an allegation that the lines of defense followed by Fields and Ewing were antagonistic or divergent from that of appellants. Actually, we gave appellants more than they were entitled to when we asserted they made a motion in mid-trial to sever at the point when they claim the women presented evidence that was antagonistic to their defense. Appellants never made such motion, though they did discuss the possibly antagonistic nature of the testimony, and possible testimony, of Robert Seegers (a witness called by Ewing) at a bench conference (Tr. 1749–1759).

What appellants' brief contends is that the court should *sua sponte* have severed the men's trial from the women's following Seegers' testimony. We indicated our reasons for denying that point in our original opinion and the reason there stated need not be repeated here. Additionally, however, we observe that appellants are trying in their Petition for Rehearing to buttress their present *sua sponte* claim by referring to the *pre-trial* motion for severance as though the pre-trial motion was based on the same claim as the *sua sponte* claim. However, the grounds Jones' counsel argued as justifying a severance pre-trial, and what are now claimed to have existed mid-trial, are completely different. The pre-trial motion requested severance from Burgin because Burgin was not one of the original *planners* of the conspiracy; while appellants' *sua sponte* argument is based on the claim that the judge, midway in the trial, without any motion therefor, should have severed the trial of Gorham and Jones from that of Ewing and Fields because

Ewing in her defense offered evidence that was antagonistic to the defense of Gorham and Jones. Even if the Ewing evidence had been sufficiently antagonistic to justify a severance, which we deny, the pre-trial motion for severance as argued by counsel was not in any way related to the *sua sponte* claim for severance—each sought a severance for a different purpose from different defendants. In fact, the basis asserted to justify the requested pre-trial motion for severance (*Id.* at 67) constituted grounds for *not severing* the trial of Ewing and Fields from appellants *sua sponte* in mid-trial—*i. e.,* Gorham, Jones, Ewing and Fields were *all* charged with participating in the original *planning* of the conspiracy.

3. Appellants, for another major point, assert that the court relied on testimony which was not part of the record in this case and which petitioners had no opportunity to cross-examine or to rebut and that, as a consequence, petitioners were denied (1) their Sixth Amendment rights to confront the witnesses against them and (2) the opportunity to prove that promises of immunity from prosecution allegedly made by Director of Corrections Hardy and United States District Judge Bryant were given freely and without duress.

Dealing with the second point first, our original opinion in *Gorham* discusses this issue. 173 U.S.App.D.C. at 145–147, 523 F.2d at 1094–96.

It is appellants' position that they were denied their right to prove the validity of the promises of immunity when their request to subpoena Judge Bryant was denied by Judge Gasch. It appears, however, from the transcript of the trial that they never requested a subpoena for Judge Bryant for that purpose. Their contention, thus, lacks any proper foundation in the record and is without merit.

The relevant extract from the transcript states:

MR. WRIGHT: At this point it may well be appropriate for me to make the motion with reference to the issuance of some subpoenaes on behalf of the defendant Burgin.

THE COURT: Yes. Subpoenaes will be issued. However, Mr. Wright, questions heretofore raised by you with respect to subpoenaeing Faunteroy, Chisholm, I have forgotten who else you mentioned, Mr. Brown, I believe—

MR. WRIGHT: I might give Your Honor the complete list Judge Bryant, Congressman Walter Faunteroy—

THE COURT: Judge Bryant will not be subpoenaed. I have talked to Judge Bryant about this. Judge Bryant made it very plain to me the circumstances under which he issued his order. No reprisals were to be taken administratively concerning these people. He said he had no authority to enjoin the Attorney General or the U. S. Attorney. That is the thrust of what was sought to be proved in the first trial through Mr. Hardy. Mr. Hardy agreed with that.

MR. WRIGHT: The others, Your Honor, include Mr. P. D. Green, Mr. Robert Terry, Mr. Marion Berry, Mrs. Marion Berry, and Mr. William Bill-Bill Brown.

I might suggest to Your Honor that *the nature of the testimony to be elicited of these witnesses, should they be called to testify, as explained to me by the defendant, would be for them to testify with reference to the oppressive and degrading conditions at the jail,* which was the basis of his participation in any uprising or demonstration on the date alleged in the indictment. *That would be true of each and every one of the witnesses I have named.*

THE COURT: I have ruled previously that the conditions in the jail should not be the subject of a demonstration, *including force and violence.* The proper way to raise that is through such a complaint as Judge Bryant was actually hearing. I would exclude testimony on that subject.

MR. WRIGHT: Well, under the Court's ruling, that the testimony would not be properly before the Court, I hardly see the necessity of issuing the subpoenaes even though the Court avails us of that opportunity.

THE COURT: As far as Mr. Brown is concerned, he is in a slightly different situation, in that he has been found guilty of participating in this conspiracy in the second trial, although he left during the course of the trial.

The testimony from Mr. Brown, which might exculpate your client, would not, of course, be within the scope of the negative ruling I gave. I don't know the extent to which his testimony can be separated.

All right.

MR. WRIGHT: I understand, Judge. Thank you.

(Tr. 1649–1650, emphasis added).

From the foregoing colloquy it is apparent that Burgin's counsel (Wright) (not appellants') requested subpoenas for Judge Bryant and the other witnesses to testify *only* as to jail conditions.[2] Judge Gasch initially thought, when Judge Bryant's name was first mentioned, that counsel proposed to subpoena witnesses to prove a prior grant of immunity, but that issue had been involved and decided by Judge Gasch in a prior trial involving other prisoners involved in the same offenses at the jail as Gorham and Jones. He thus referred to his conversation with Judge Bryant concerning his intent in the order he had issued concerning reprisals against the rioting prisoners. However, it appears from the transcript that defense counsel was not requesting subpoenas for Judge Bryant nor any of the designated witnesses to testify in any respect in support of any claim of immunity; thus, no ruling was made by Judge Gasch denying appellants the opportunity to go into that subject at trial. Appellants cannot now twist the stated purpose of the above-quoted subpoena request by Burgin for evidence concerning jail conditions into support for their present contentions that they were improperly denied an opportunity at the trial to prove they were validly granted immunity from prosecution. Such

claim was never advanced at the trial—no such proffer was made.[3] This is apparent from Appellants' Brief at 27, which cites only Tr. 1649 (the first portion of the passage quoted *supra*) in support of its claim that the issue was raised at trial. As a reading of the entire context (Tr. 1649–50) clearly shows, that quoted material does not support appellants' claim. Appellants also do not cite any other transcript reference for the immunity claim they presently assert and are even forced to rely upon a reference to the Washington Post for October 13, 1972 at A–16, for the text of the Hardy Note upon which they now base their claim. It thus appears that the immunity claim in this case has a *post hoc* genesis and, not being based on the record, has no validity.

■ 4. This brings us to appellants' claim that our original opinion relied upon evidence outside the record and thus deprived appellants of their right to confront witnesses, etc. This refers to the reference in our original opinion to a part of the record in the earlier trial of *Bridgeman, et al.* (a suit that Judge Gasch referred to in his above-quoted remarks as the "first trial"). That was the first trial of any of the inmates who participated in essentially the *same* basic jail offenses that were involved in this case. Since appellants in their brief *in this case* contended that the trial court erred in prohibiting them from introducing evidence concerning their claim of immunity from prosecution, which claim was grounded on the Hardy Note and the Judge Bryant Order, and *neither the note nor order were part of the record in this case,* we were forced by *appellants* to refer to the record in *United States v. Bridgeman,* where the note and order were involved, in order to understand their point and explain what Judge Gasch was referring to in his above-quoted remarks during the bench conference. For such purposes we are per-

---

2. We treat this request as also having been made on appellants' behalf.

3. Our original opinion, 173 U.S.App.D.C. 139 at 146, 523 F.2d 1088 at 1095, assumed from

Judge Gasch's statement that the Hardy note had been in effect proffered, but we were over-generous in this respect.

mitted to take judicial notice of other proceedings in our district court[4] but such facts were not noticed as part of our adjudication. The immunity claim was decided on other grounds—lack of authority of the alleged grantors to grant immunity—and could have been decided on the further ground that the immunity issue had not been raised at trial. Since the proceedings in Bridgeman's earlier trial must certainly have been well known to defense counsel this information was no surprise to them. The validity of the Hardy note and the order of Judge Bryant had been fully litigated in that trial by jail inmates who were in privity in the conspiracy with appellants Gorham, Jones and others. The court had found the claims of immunity based on such note and order to be invalid and we affirmed[5] on the ground that neither Director Hardy nor Judge Bryant had any legal authority to make the binding promise of immunity that appellants now claim. Thus, our adjudication in this respect did not rely on any extra-record references and such references as were made did not prejudice appellants.

■  5. Petitioners also assert that there is no support in the record for our statement that, "Both the Hardy note and the court order by Judge Bryant were obtained under duress." *Gorham,* 523 F.2d at 1097 n. 9. We need not consider this claim as the statement referred to was made in a footnote and is in no way related to the basis of our decision that Judge Bryant and Director Hardy lacked authority to grant immunity to appellants and that the issue was not raised at trial.[6] In any event, the immunity appellants claim was given them on October 11th would only apply to their acts before the grant and would have no effect on their conviction for escape on October 25, 1972.

6. Appellants also correctly point out that the following statement in our original opinion mistakenly attributed certain testimony to James Bridgeman; Seegers' name was inadvertently omitted. The two sen-

---

4. *See* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 200[3] (1975). Even if the note and order could be classified as "adjudicative facts," "[a] court may take judicial notice, whether requested or not" [Fed.R.Evid. 201(c)] and "[j]udicial notice may be taken at any stage of the proceeding" [*Id.* 201(f)]. Since adjudicative facts were not involved, opportunity to be heard is unnecessary. *See* Fed.R. Evid. 201(a). *Cf. Id.* § 201(e); *Wells v. United States,* 318 U.S. 257, 260, 63 S.Ct. 582, 584, 87 L.Ed. 746, 748 (1943).

5. *United States v. Bridgeman,* 173 U.S.App. D.C. 150, 160–162, 523 F.2d 1099, 1109–11 (1975). See text at headnotes 8 to 13.

6. The statement as to duress is correct. We need not outline the numerous acts of specific duress against the guards, Hardy, and the effect of the prisoner's acts and threats on Judge Bryant. The record reeks of duress, against individuals and against the public. (Tr. 229–230, 629–630, 632, 668, 670–672, 705–707, 762–763, 819–820, 871, 874–875, 880, 882, 937–938, 940–941, 945). The very magnitude of the escape attempt on October 11th and the ensuing riot in the jail, accompanied by the use of force and violence and threats against the life of 12 hostages, caused great anxiety in the public and in those responsible for the safety of persons involved. It is sufficient that we refer to Appellants' Petition for Rehearing, which inadvertently admits that the alleged promises of immunity in the note and court order were obtained under great duress:

> Here, this Court is faced with the far more important consideration of public policy— whether to allow *promises which may save human lives* by permitting the executive branch to exercise its prosecutorial discretion through agreements not to prosecute. These considerations transcend any technical application of the contractual doctrine of consideration.

Appellants' *Petition For Rehearing,* Dec. 12, 1975, at 8–9 (emphasis added). The foregoing description is accurate. It correctly describes the Hardy note and the Bryant orders as "promises which may save human lives." In other words, appellants' petition admits the that plural "promises" (the Hardy Note and the Bryant Order) were extracted under threats to take "human lives"—otherwise, how could "human lives" be saved by the "promises"? Appellants' own characterization of the facts under which the alleged promises to grant immunity were made is thus sufficient to deny their validity. "Promises" extracted under threats to take human lives are invalid on their face and appellants' petition also admits this statement of the law. As Appellants' Brief at 3 states: "We agree with the Court that had the Hardy Promise or the order of Judge Bryant been extracted under 'duress,' neither would have been unenforceable [*sic*]."

tences at that point should be corrected as follows:

> . . . *Defendant Ewing* attempted to undermine the credibility of James Bridgeman, *with the testimony of Seegers* (the witness who testified that the gun was tossed into the jailyard). The *antagonism* suggested by *Seegers' testimony* cannot be equated with an irreconcilable conflict which by itself suggests guilt.

The corrections are set forth in italics. What happened in the trial was that Bridgeman, a Government witness, had testified that the gun probably came in through the Rotunda on October 10th following a contact visit at the jail between Ewing and Jones. Seegers, called by defendant Ewing, testified that a gun similar to the gun used in the escape attempt and riot was picked up by Gorham in the recreation yard of the jail on October 2nd, apparently after being thrown over the jail wall by some unknown person, and that Jones had previously told him he was going to get Linda Ewing to throw the gun over the jail wall.

Thus, Seegers' testimony as to the gun possibly coming over the wall on October 2nd by some unknown person, following Jones' statement that he was going to get Ewing to do it, did not inculpate Ewing as directly as did Bridgeman's testimony to the effect that on October 10th Ewing actually met Jones in a contact visit at the jail and shortly thereafter Jones had the gun. The only difference between the circumstantial evidence adduced from the two witnesses insofar as Ewing was concerned was that Ewing was not involved as directly if the gun came over the wall as she was if it came following her contact visit with Jones.

As for Gorham and Jones, the principal difference in the testimony offered by the Government (Bridgeman) and that offered by Ewing (Seegers) was that by Seegers' testimony a gun came in probably over the wall on October 2nd and was handled by Gorham, and by Bridgeman's testimony a gun probably came in on October 10th

through the contact visit and Gorham knew about it shortly thereafter. Both witnesses connected Gorham with the gun at the time of its introduction into the jail or shortly thereafter. (Gorham definitely had a gun during the escape attempt and riot (Tr. 938)). Jones was involved in the planning according to both witnesses and actually had the gun on the 10th according to Bridgeman. Thus both Bridgeman and Seegers, in their testimony, inculpated exactly the same people, Gorham, Jones, and Ewing, albeit in different ways, in the introduction of the gun into the jail. As we view this evidence neither Gorham nor Jones were prejudiced by the conflicts it involved. Our opinion in this respect is reinforced by the fact that *the jury found both* men not guilty of introducing *the ".38 caliber pistol . . . into . . . the District of Columbia Jail"* (Indictment, Count 2, emphasis added). Gorham and Jones thus apparently benefitted from the evidence since they were acquitted on the Second Count of the indictment which charged they had unlawfully introduced the guns into the jail.[7]

We see no reason to alter our decision because it was Seegers and not Bridgeman who testified to the effect that the gun probably was tossed into the jailyard, and our original opinion fully sets forth our reasons for denying appellants' claim that they were entitled to a *sua sponte* severance because of Seegers' testimony. For all the reasons above stated we adhere to our original disposition of the case.

*Petition for rehearing denied.*

---

7. Alleged to be a violation of D.C.Code § 22–2603 (1973).