UNITED STATES of America

v.

Anthony GIACALONE, a/k/a "Tony," Anthony DePasque, a/k/a "Tony," a/k/a "Mash," Joseph Arnao, (date of birth: 7/11/37), and Joseph Arnao, (date of birth: 8/3/41), Defendants.

(S) 80 Cr. 123 (RWS).

United States District Court,
S. D. New York.

Oct. 19, 1980.

**40**

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for the United States of America by Denise Cote, Asst. U. S. Atty., New York City, of counsel.

Daniel P. Hollman, New York City, for defendant Joseph Arnao.

## OPINION

SWEET, District Judge.

Defendant Joseph "Joey" Arnao (date of birth 8/3/41)[1] has moved to suppress a statement he gave to agents of the Federal Bureau of Investigation on July 10, 1980. For the reasons set forth below, the motion is denied.

Two indictments were returned in this case. The first, filed on February 26, 1980, charged three named defendants, Joey Arnao's present co-defendants, and a fourth defendant identified only as "John Doe a/k/a 'Joey'" with certain of the offenses outlined above. After the return of that indictment, F.B.I. agents engaged in further investigation aimed at identifying and locating the fourth defendant, who was then known to them, as to the grand jury, only as "Joey." The agents received information from an unidentified source linking several people named "Joey" with one of the already named indicted defendants, Joseph Arnao, date of birth 7/11/37. That same source indicated to the agent that one of the "Joeys" associated with Joseph Arnao was Joseph Arnao's cousin.

Acting on this tip, two F.B.I. agents went to the home of Joey Arnao, Joseph Arnao's cousin, on July 10, 1980. The agents interviewed Joey outside, in an alley next to his house. The agents informed Joey that they were investigating a criminal matter in which his cousin Joseph had been indicted. They also informed him that they had in their possession an arrest warrant for John Doe "Joey," a defendant charged in the same indictment, and that they personally believed that he was that "Joey."[2] They did not, however, take Joey Arnao into custody at that time, although it was stated that failure to cooperate with them could result in spending time in jail.

At the suppression hearing held on this motion, Joey Arnao testified that one of the F.B.I. agents told him that he could be "lock[ed] up right there on the spot," but that he could avoid spending an "uncomfortable weekend in jail" if he would just have a conversation with the agent. The agent's version of the facts is quite different. His testimony indicates that he did point out to Arnao the advantages of cooperating with the government and the unpleasantness of "serving a long sentence in jail," but does not know if he mentioned the possibility of spending *that weekend* in jail. The agent also testified that he told Joey Arnao that if Joey could convince him, the agent, that he, Joey, "wouldn't run," the agent would serve Arnao with a grand jury subpoena instead of executing the warrant.

---

1. There are two defendants in this action named Joseph Arnao. The first, date of birth 7/11/37, is the cousin of the second, date of birth 8/3/41. It is the younger Joseph Arnao who brings the present suppression motion. For the sake of clarity, the older Joseph Arnao will be referred to as Joseph Arnao, the younger, as "Joey" Arnao.

2. Testimony at the suppression hearing held August 28, 1980, indicated that, although the agents told Joey Arnao that they believed him to be the John Doe "Joey" named in the indictment and arrest warrant, they did not actually believe that they had probable cause to arrest him on July 10. The court accepts that testimony as truthful.

I find that the conversation about jail time focused on the possibility of a long sentence *after* trial, and on the chance of avoiding such a sentence through cooperation, rather than on the possibility of spending that very July weekend in jail. Any mention of the latter possibility must be weighed against the agent's indication to Joey Arnao that he would not be arrested that day if he could convince the agent that he would not flee.

At any rate, Joey Arnao did cooperate, at least in that he gave the agents a statement. He told the agents that he and his cousin had been involved in the commodities business together during 1976. He also provided more general information regarding his employment history and income tax status. Upon being presented with a list of names and a number of photographs, Arnao identified several individuals as commodities dealers, but claimed not to recognize several others who are accused or admitted participants in the embezzlement scheme. Arnao denied that he had ever been arrested, but retracted that denial when shown a "mug shot" of himself that the F.B.I. had acquired from the New York Police Department. This statement in its entirety is the subject of the present suppression motion.

It is uncontested that no *Miranda* warnings were given to Joey before or during this interview.

At some point during the interview, the agents did in fact serve Joey Arnao with the above-mentioned grand jury subpoena. That subpoena required Arnao's presence at a lineup, which took place on July 17, 1980. At the lineup, Joseph Lubin, a key government witness and a participant in the crimes with which Joey Arnao now stands accused, identified Joey as "John Doe a/k/a 'Joey,' " the previously unidentified alleged co-conspirator. Thereafter, on August 8, 1980, a superseding indictment was filed, in which Joseph "Joey" Arnao was named as the fourth defendant.

Joey Arnao's suppression motion is grounded in an alleged violation of his constitutional rights, presumably, those created by the Fifth and Sixth Amendments. The Government contends that neither the Fifth nor the Sixth Amendment rights of Joey Arnao were infringed during the interview conducted by the F.B.I. agents. The Government argues, first, that the interrogation was not custodial, rendering *Miranda* warnings unnecessary and Joey Arnao's Fifth Amendment rights inviolate. The Government also contends that, at the time of the interview, the agents lacked probable cause to believe that Joey Arnao was the "Joey" named in the indictment, and that there was therefore no Sixth Amendment violation.

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), mandates that suspects and defendants in criminal cases be given certain warnings regarding their constitutional rights at the outset of any custodial interrogation. Under *Miranda*, any statement given in response to interrogation by law enforcement officers by one in custody who has not been properly informed of his rights must be suppressed. The test for "custodial interrogation" set forth in *Miranda, id.* at 444, 86 S.Ct. at 1612, and reaffirmed in *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977), is as follows: "custodial interrogation [means] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." A statement given by one not in custody need not be preceded by *Miranda* warnings or a waiver of Fifth Amendment rights to be admissible into evidence. *Id.* at 495, 97 S.Ct. at 713.

Here, Joey Arnao was not taken into custody. Even though the agents had with them an arrest warrant which, they implied at the time, authorized them to arrest Joey Arnao, they did not execute it. Rather than take Joey Arnao into custody, the agents spoke with him at his home, where they found him. Furthermore, there is nothing in the record to establish that Joey Arnao was "deprived of his freedom of action in any significant way." The simple fact of an interview conducted by law enforcement officers can not be deemed to

effect such a deprivation; that theory was specifically rejected by the Supreme Court in *Oregon v. Mathiason, id.* In addition, even though the agents may have indicated to Joey that they believed him to be the individual named in the indictment and on the arrest warrant, and even assuming that they threatened him with a few nights in jail if he did not cooperate, these factors do not prove that Joey Arnao was deprived of his freedom of action in any significant way for purposes of *Miranda.* These factors are outweighed by the agent's credible testimony that he told Joey Arnao that if Joey convinced him that he would not flee, Joey would be served with a grand jury subpoena instead of being taken into custody, and the fact that the agent in fact chose the second option. Finally, there is the agent's assertion that, at the time of this interview, he did not believe that the Government had probable cause to arrest Joey Arnao, an assertion that this court accepts.[3]

All of these factors compel a finding that this interrogation was not custodial. Implicit in *Oregon v. Mathiason, id.,* is the idea that the test for "custodial interrogation" is objective, not subjective, and that intimidation by law enforcement officers does not by itself work such a deprivation of freedom as to necessitate the giving of *Miranda* warnings. Thus, in view of one agent's denial of a sufficient basis for arresting Joey Arnao on the day of the interview and his indication to Arnao that he would *either* be arrested or subpoenaed, the mere fact of some intimidation by the agents in this case can not be said to have deprived Joey Arnao of his freedom. Finally, the agent's decision to serve the subpoena rather than execute the warrant, in the circumstances outlined above, supports the conclusion that this interrogation was not custodial.

Hence, judged by the standards set forth in *Miranda* and *Oregon v. Mathiason,* Joey Arnao was not entitled to *Miranda* warnings. Furthermore, the evidence does not show that his statement was coerced. His Fifth Amendment rights were therefore not violated.

Joey Arnao was not assisted by counsel at the July 10 interrogation. It is uncontested that the F.B.I. agents who questioned him did not advise him of his constitutional rights. There has been no showing that Arnao knowingly and intelligently waived those rights; specifically, there has been no showing that he knowingly and intelligently waived the assistance of counsel.[4] For all of these reasons, defense counsel suggests that Joey Arnao's Sixth Amendment rights were violated, and that the July 10 statement must be suppressed. The Government, on the other hand, argues that the F.B.I. agents did not, at the time of the interrogation, have probable cause to believe that Joey Arnao was the "John Doe a/k/a 'Joey'" named in the original indictment, and contends that because of this Arnao's Sixth Amendment right to counsel had not yet attached. Thus, the Government maintains that the taking of the July 10 statement in the absence of counsel or a clear waiver of the right to counsel did not infringe Joey Arnao's Sixth Amendment rights, and that that statement should be admitted at trial. The court agrees that the defendant's Sixth Amendment rights had not attached and so were not violated, but for reasons other than those put forth by the Government.

■ Under *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972), a defendant's Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated against him." The initiation of adversary judicial proceedings may be marked "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689, 92 S.Ct.

---

3. *See note 2.*

4. There was testimony at the suppression hearing indicating that the agents advised Joey Arnao to get a lawyer. This advice, however, apparently came at the end of the interview, and so even if it comported with constitutional standards for advice of rights, could not support the introduction of the statement already made at the time the advice was given if Arnao's Sixth Amendment right to counsel had attached at the time of the interview.

at 1882. The rule in this Circuit is that, after judicial proceedings are initiated and the right to counsel attaches, a defendant in a criminal case may effectively waive the assistance of counsel only after being advised of his constitutional rights by a judicial officer, whose duty it is to explain to the defendant the content and significance of those rights and of the charges lodged against him. *See United States v. Mohabir*, 624 F.2d 1140 (2d Cir. 1980). *See also United States v. Satterfield*, 558 F.2d 655 (2d Cir. 1976).

Under *Mohabir* and *Satterfield*, it is the objective fact of the initiation of judicial proceedings that entitles an individual to special Sixth Amendment safeguards. The question before this court is therefore not, as the Government contends, whether the F.B.I. agents who conducted the interview had probable cause to arrest Joey Arnao, but whether, at the time of the interview, Joey Arnao was in fact under indictment. If he was, he was entitled to the protection mandated by *Mohabir*, regardless of the belief of the agents regarding the existence of probable cause.

■ This court must therefore determine whether the return of a "John Doe" indictment by a grand jury initiates judicial proceedings against a then unidentified individual, who is only subsequently identified and against whom a superseding indictment is later filed. I find that it does not.

At the time the original indictment in this case was filed, the grand jury apparently did not know who the fourth alleged co-conspirator was, it is for that reason that a John Doe indictment was returned. Putting it differently, at the time the original indictment was filed, the grand jury lacked sufficient information to charge Joey Arnao, and did not in fact charge him. Even the F.B.I. did not know the specific identity of the "Joey" whose participation in the embezzlement scheme the indictment alleged; for that reason, the agents contin-

ued their investigation, in an effort to identify, and secure an indictment against, the fourth alleged co-conspirator. It was not until after the lineup on July 17 that the Government believed it had probable cause to ask the grand jury to charge Joey Arnao. It was not until August 8 that the superseding indictment in which Joey Arnao was named was filed. Therefore, the court finds that it was not until August 8 that adversary judicial proceedings were initiated against *Joey Arnao*, as opposed to some unknown "John Doe a/k/a 'Joey.' " [5] Hence, at the time of the July 10 interview, Arnao's Sixth Amendment right to counsel had not attached. The procedure required by *Mohabir* for the interrogation of already indicted defendants was not necessary. The taking of Arnao's statement did not violate his Sixth Amendment rights.

IT IS SO ORDERED.

---

5. It should be noted that the situation here differs from cases in which a John Doe indictment is returned against a specific individual whose name is not known to the grand jury but whose identity is. In such cases, it is clear that the defendant's Sixth Amendment rights attach at the time of the indictment. Here, however, the John Doe format was utilized because neither name nor identity was known at the time of the original indictment. It is for that reason that Sixth Amendment rights did not then attach.