**UNITED STATES of America,**

v.

**Sidney ANDERSON, a/k/a "Andrew Hunter", a/k/a "Andrew Punter", Defendant.**

**No. 82 Cr. 854 (RWS).**

United States District Court, S.D. New York.

June 8, 1983.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Peter B. Sobol, Asst. U.S. Atty., New York City, of counsel), for U.S.A.

Ivan Stephan Fisher, New York City (David W. Ely, New York City, of counsel), for defendant.

## OPINION

SWEET, District Judge.

At a pretrial conference held on May 27, 1983, counsel for defendant Sidney Anderson ("Anderson") orally moved to suppress two statements made by Anderson. For the reasons stated below, the motion will be denied.

■ Anderson first seeks to suppress a tape recording made by a confidential informant without Anderson's knowledge on April 16, 1982. According to a transcript of the recording, the informant and Anderson were engaged in a conversation when the informant told Anderson that an associate, Michael Corbett ("Corbett") "dropped a dime on" him, which apparently means that Corbett had told the authorities of Anderson's commission of the offense in question. Anderson's reaction was:

Yo man, boy I'm telling you, don't even tell me that, if thats [sic] the case man, I swear man. If thats [sic] the case man. I swear man, I'll get Mike bumped off.

The conversation continued:

[Informant]: Yeah. Just don't tell him that I told you that [expletive deleted] man.

[Anderson]: I am telling the truth. I'll get the man bumped off.

Later in the conversation Anderson states:

Well, like I said man, the man can drop the dime all he wants to and he's gonna get *mugged.*

(emphasis in original). Still later the following exchange took place:

[Informant]: Yeah. Don't even worry about what he said and [expletive deleted] then. Corbett is going to make me kick his ass.

[Anderson]: What?

[Informant]: He is going to make me kick his ass.

[Anderson]: He is going to make me kick his ass too.

Anderson argues that these statements are not admissible on grounds of relevance because they are ambiguous and can be interpreted either as consciousness of guilt or as simply an angry reaction to an accusation. The statements do, however, meet the relevancy test of Fed.R.Evid. 401 since they support the inference of consciousness of guilt which in turn supports an inference of actual guilt. *See United States v. Buigues,* 568 F.2d 269, 273 (2d Cir.1978). *See generally* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[10] at 401-56 to -60 (1982).

█ The difficult question raised here is whether this evidence should be excluded under Fed.R.Evid. 403, which reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Our Court of Appeals has recently stated that while the potential prejudice from the admission of death threats may be great, the question of their admissibility is governed by the usual balancing process of Rule 403. *United States v. Qamar,* 671 F.2d 732 (2d Cir.1982). If the threat is otherwise admissible, it should be allowed into evidence unless its prejudicial effect substantially outweighs its probative value. Nevertheless, because of the great potential prejudice inherent in the admission of death threat evidence, the Government "must have an important purpose for the evidence in order to satisfy the Rule 403 balancing test." *Id.* at 736. *See also United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.) ("[T]he balance between probativeness and prejudice will differ according to the purposes for which a piece of evidence is to be admitted."), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980); *United States v. Check,* 582 F.2d 668, 685-86 (2d Cir.1978).

The Government's purpose in desiring to introduce the evidence in question here is apparent—it contends that the statements are clear evidence of consciousness of guilt. At this stage of the proceedings, however, this court cannot adequately assess either the probative value or the potential prejudice of the statements. This assessment should be made at the trial, at which point the nature and extent of the Government's proof and how the Government intends to use the statements in question will be clearer and will enable this court to better perform the balancing process contemplated by Rule 403. *See id.; United States v. Qamar, supra,* 671 F.2d at 736; 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03] (1982). Thus, Anderson's motion to suppress the tape recorded statements will be denied at this time with leave to renew at the appropriate time during trial.

█ Anderson also seeks to suppress certain statements made to an Assistant United States Attorney and to Postal Inspectors during an interview conducted after his arrest but prior to his arraignment and prior to his indictment. Anderson contends that these statements were obtained in violation of his Sixth Amendment right to counsel. No claim is made under the Fifth Amendment and, indeed, could not be made because Anderson concedes that he was given a sufficient *Miranda* warning prior to the interview.

Anderson's argument is based on *United States v. Mohabir,* 624 F.2d 1140 (2d Cir. 1980), in which our Court of Appeals held that a mere *Miranda* warning is insufficient to safeguard an indicted defendant's Sixth Amendment rights. *Id.* at 1149.

Anderson, however, had not been indicted when the interview took place and, as the court noted in *Mohabir,* the indictment "marks a crucial point for the defendant." *Id.* at 1148. He argues nevertheless that a criminal prosecution had been commenced against him because the prosecutorial decision had "crystallized," and that his Sixth Amendment rights had therefore attached at the time of his interview. In support of this claim, Anderson notes that a complaint had been filed, an arrest warrant had issued, a detainer had been lodged against

him in state prison, and a writ of habeas corpus ad prosequendum had issued to secure his presence. The rule in this Circuit, however, is that the filing of a complaint and the issuance of an arrest warrant does not trigger the right to counsel under the Sixth Amendment. *United States v. Duvall,* 537 F.2d 15 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). *See Edwards v. Arizona,* 451 U.S. 477, 480–82 n. 7, 101 S.Ct. 1880, 1882–83 n. 7, 68 L.Ed.2d 378 (1981) (declining to reach question under Arizona law).

 *Mohabir* has not modified this holding. As noted recently in *United States v. Foley,* No. 83 Cr. 18 (ELP) (S.D.N.Y. Apr. 20, 1983), *"Mohabir* concerned post-indictment interrogation by a prosecutor, and the distinction between questioning a defendant before and after the indictment was again underlined." *Id.,* slip op. at 7 (citations omitted). Indeed, Judge Palmieri rejected essentially the same argument in *Foley* as is advanced here. *See also United States v. Giacalone,* 508 F.Supp. 39, 43 (S.D.N.Y.1980) (noting indictment as point of initiation of criminal proceedings), *aff'd,* 659 F.2d 1063 (2d Cir.), *cert. denied,* 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981); *United States v. Satterfield,* 417 F.Supp. 293, 296 (S.D.N.Y.1976) (suggesting that prior to indictment there may be reasons why suspect might rationally wish to deal with agents without intervention of counsel) (quoted in *Mohabir, supra,* 624 F.2d at 1149), *affd,* 558 F.2d 655 (2d Cir. 1976).

Anderson attempts to distinguish *Duvall* on the ground that the complaint in that case was filed and the arrest warrants were issued in order to effect the apprehension of suspects who were at large, while here Anderson was already in custody. Anderson was in the custody of New York State, however, and the complaint was filed and warrant issued pursuant to the Interstate Agreement on Detainers, 18 U.S.C., Appendix, to ensure that his presence could be obtained. There is no evidence to suggest that Anderson was any more the subject of a criminal prosecution than was the defendant in *Duvall.*

For the reasons stated above, the motion to suppress is denied with leave to renew with respect to the statement recorded by the informant.

IT IS SO ORDERED.