*860 OPINION OF THE COURT
Evelyn L. Braun, J.
Defendant is charged with multiple counts of rape in the first degree under two separate indictments, Nos. 1405/05 and 2755/06. Indictment No. 1405/05 was originally a “John Doe” indictment which was amended on May 31, 2006 to reflect the defendant’s name pursuant to the match of his DNA to the DNA profile under which the indictment was filed. The defendant moved to suppress oral, written, and videotaped statements made in relation to these charges and, on December 4, 2007, the court denied the motion as to defendant’s first statement and granted it as to all subsequent statements (see decision dated Dec. 4, 2007). The People now move to reargue the motion, seeking an order denying defendant’s motion to suppress in its entirety.
The pertinent facts of the case, which have been set forth with greater specificity in the court’s original decision, are that defendant was arrested pursuant to a match of his fingerprints to those recovered at the scene of two of six rapes being investigated as part of a pattern which the police suspected, on the basis of certain common factors, may have been committed by the same male. Three of the rapes within the pattern were linked to each other by common DNA and more loosely to the other rapes by virtue of a similar modus operand!. After learning of the fingerprint match, the detective assigned to the investigation, Detective Santangelo, went to defendant’s home and, utilizing a ruse, asked defendant to accompany him to the precinct. Defendant did so and upon arrival at the precinct was advised of his Miranda rights as well as the true purpose of the inquiry, specifically, the fingerprint match at the scene of the two rapes. Defendant then began to discuss an incident which the detective believed matched the specifics of one of the rapes in his pattern, the July 4, 2004 rape for which “John Doe” had been indicted. He ultimately made statements consistent with the facts in all six rape cases, and subsequently made written as well as videotaped statements reflecting these oral admissions.
In suppressing all but the first statement made by defendant to the police, the court recognized that although the right to counsel “attaches indelibly upon the commencement of formal proceedings” (People v West, 81 NY2d 370, 373 [1993]), and would therefore generally attach upon the filing of an indictment, the filing of the “John Doe” indictment did not “serve to commence a criminal action [against this defendant] so as to *861 activate [his] indelible right to counsel” (People v Dickson, 133 AD2d 492, 493 [3d Dept 1987]), because no specific individual had been “singled out for prosecution by the State” (id.). However, it found that once defendant made his first statement, corroborating some of the specific details contained in the pattern being investigated by Detective Santangelo, the detective could reasonably be charged with the knowledge that defendant was, in fact, the “John Doe” on the indictment* at which point, defendant’s indelible right to counsel attached, mandating the end of all further inquiry and the suppression of all statements made as a result of the continued investigation.
The People now move to reargue the court’s decision, contending that a “John Doe” indictment does not trigger a right to counsel (citing Dickson, supra), a point they made in their original memorandum of law, and further contending, for the first time, that the right to counsel does not attach until defendant’s name is substituted in the indictment. They cite the holding in United States v Giacalone (508 F Supp 39 [SD NY 1980], affd 659 F2d 1063 [2d Cir 1981], cert denied 454 US 964 [1981]) in support of this contention.
In Giacalone, a defendant identified as “John Doe aka Joey” was indicted along with three others for certain offenses. Agents investigating the matter learned from an unidentified source that “Joey” was Joey Arnao. They went to Joey Arnao’s home and advised him that they believed that he was the “Joey” named in the “John Doe” indictment. They then questioned him and he gave a number of statements relative to the incident. Thereafter, the defendant was placed in a lineup, where he was identified as “John Doe aka Joey.” A few weeks later, the defendant was named in a superceding indictment as the fourth defendant. In denying the defendant’s motion to suppress on right to counsel grounds, the U.S. District Court for the Southern District of New York not only held that an indictment returned against an unidentified “John Doe” does not constitute the initiation of judicial proceedings, which the Dickson court also held, but that it is not until the name of a defendant is substituted for the “John Doe” on that filed indictment that judicial proceedings are deemed to have been initiated, thereby triggering the defendant’s right to counsel. In explaining its holding, the court pointed out that “at the time the original *862 indictment was filed, the grand jury lacked sufficient information to charge Joey Arnao, and did not in fact charge him” and that it was not until the filing of the superceding indictment in which Joey Arnao was named that “adversary judicial proceedings were initiated against Joey Arnao” (id. at 43). Clearly then, in Giacalone, Joey Arnao’s right to counsel did not attach when the police had probable cause to believe that he was the “John Doe aka Joey” named in the indictment, nor even beyond that point when he was identified in a lineup as “John Doe aka Joey.” It was not until the defendant’s name was substituted in the indictment that his right to counsel was triggered.
Obviously, the standard utilized in Giacalone, which was affirmed by the Second Circuit Court of Appeals, was much stricter than that utilized by this court and would have, had it been applied herein, resulted in a denial of defendant’s motion to suppress in its entirety. The court finds that although Giacalone is not binding on this court, it is certainly persuasive authority supporting the application to reexamine the issue of when the right to counsel attached under the circumstances of this case.
In this regard, however, although the People assert that the issue is a “black-and-white” one which “does not hinge on any subjective beliefs of the police” (People’s mem at 23), it appears that the Court of Appeals holding in People v Waterman (9 NY2d 561 [1961]) renders the issue not quite so clear cut. In Waterman, the Court of Appeals noted that “[w]hile it is not clear when the substitution of names was made in the indictment, it is clear that at the time of the [police questioning], [the defendant] was in fact an accused” (id. at 564). It held that “there can be no doubt that the police officer knew [prior to questioning the defendant] that [he] had been indicted for that crime” (id.), and thereupon suppressed the defendant’s statements.
Thus, Waterman calls into question the applicability in New York of the strict Giacalone standard that the right to counsel does not attach until the defendant’s name is actually substituted on the indictment. Nevertheless, it is clear that the Waterman standard is stricter than the standard previously applied in the instant matter by this court. This court is constrained to apply the Waterman standard herein. In doing so, it is fair to conclude that after the entire process of questioning defendant, Detective Santangelo became “reasonably certain” that he was the subject of the “John Doe” indictment. It cannot be said, however, that “there [could] be no doubt that the police officer *863 knew [prior to questioning the defendant] that [he] had been indicted” for the crimes contained in the “John Doe” indictment.
Accordingly, based on the foregoing, the People’s motion to reargue is granted and upon reargument, the court’s prior decision is modified to the extent that the branch of defendant’s motion to suppress the statements relevant to the crimes charged under indictment No. 1405/05 is denied in its entirety.
So too, that branch of defendant’s motion to suppress those statements made in connection with the crimes subsequently charged under indictment No. 2755/06 is denied in its entirety.
Assuming arguendo, that defendant’s statements made in connection with indictment No. 1405/05 had been subject to suppression, those statements made in connection with the crimes ultimately charged under indictment No. 2755/06 would not be suppressed inasmuch as the court finds them to be unrelated (see People v Cohen, 90 NY2d 632 [1997]; People v Vella, 21 NY2d 249 [1967]; People v Townes, 41 NY2d 97 [1976]; People v White, 244 AD2d 765 [1997]; People v Campbell, 275 AD2d 984 [2000]; People v Taylor, 27 NY2d 327 [1971]; People v Ferringer, 120 AD2d 101 [1986]; People v West, 81 NY2d 370 [1993]; People v Kazmarick, 52 NY2d 322 [1981]).
Order entered accordingly.

 Although the court used the term “probable cause,” the standard delineated by the court was “reasonable certainty,” which standard the court found was met by the facts in this case.