**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph N. GALLO, Anthony Vitta and
Salvatore Migliorisi, et al.,
Defendants-Appellants.**

**No. 86–CR–452 (JBW).**

United States District Court,
E.D. New York.

Nov. 14, 1986.

Douglas E. Grover, Laura A. Ward, Sp. Attys., U.S. Dept. of Justice, Organized Crime Strike Force for the U.S.

Richard A. Rehbock, New York City, for defendant Anthony Vitta.

David A. DePetris, DePetris & Meyer, New York City, for defendant Salvatore Migliorisi.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendants Anthony Vitta and Salvatore Migliorisi are in custody because they were found to constitute a danger to a potential witness, "X." They move for their release pending trial. Decision requires a balancing of the dangers to the witness and to society against the likelihood that the defendants' continued incarceration would protect "X" and the unfairness of incarcerating for long periods persons presumed to be innocent. As indicated below, analysis of the facts and various relevant factors requires conditional release.

## I. FACTS

Vitta and Migliorisi were indicted on June 20, 1986 along with fourteen co-defendants. Both were charged with extortion in violation of 18 U.S.C. § 1951. Vitta is alleged to have engaged in loansharking. 18 U.S.C. §§ 892 and 894. He is also alleged to have been a member of a criminal enterprise in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq. United States v. Gallo*, CR–86–452 (E.D.N. Y.). The government expects "X," the alleged victim of the defendants' extortion, to testify at trial.

The defendants were arrested on June 20, 1986. At a June 24th hearing before the Magistrate an FBI agent testified about threats to "X." "X" had received three messages on his telephone answering machine on the evening of June 21st. The first message was from an unknown caller who threatened his life, and the second and third messages were from Migliorisi, asking for an appointment to see "X" at the latter's place of business. On Monday,

June 23rd, Migliorisi and his attorney visited "X" seeking his signature on papers necessary to obtain Vitta's release on bail. Migliorisi was reported by one of "X"'s employees to have said that "X" was in danger.

The Magistrate found that incarceration was required because of the defendants' threat to "X." Both defendants were ordered incarcerated pending trial. On stipulation that no additional hearing was required, this court affirmed the Magistrate's detention order on June 27th. On August 27th the Court of Appeals affirmed without opinion. 801 F.2d 392.

At the time of the initial detention hearing and appeals it was believed that the case could be tried promptly. Subsequently, during pretrial conferences, it became clear that because of an overlap of defendants and defense counsel, the instant case could not be tried before two lengthy trials in complex multi-defendant cases, *United States v. Gotti,* CR–85–178 (E.D.N.Y.) and *United States v. Ruggiero,* CR–83–412 (E.D.N.Y.). Jury selection in the *Gotti* case was completed on September 25, 1986 and a projected three-month trial is now in progress. Trial in *United States v. Ruggiero* will start after the *Gotti* case is completed; it is expected to last several months. Accordingly, by agreement of all parties, and with due regard to Speedy Trial Act requirements, the instant case was set for trial in March of 1987.

Since this is a complex case involving multiple counts and numerous defendants, the trial will take many months. The result of these necessary delays would be the incarceration of the defendants, who are presumed innocent, for over a year. Based on this trial date and on other information presented by defense counsel, the defendants moved under 18 U.S.C. § 3142(c) for reconsideration of the detention order.

On September 22nd and 23rd the court held hearings at which "X" appeared before the court for the first time. During the course of the hearings the witness' presentence report in another case came to the court's attention.

"X" had originally been scheduled to be sentenced by another judge for conspiracy to defraud the Internal Revenue Service on his corporate income taxes and for income tax evasion on his personal returns. The Indictment, CR–86–220, charges eleven counts of tax fraud using complex and extensive schemes to avoid taxes totaling some $100,000 from 1980 to 1984. "X" pled guilty to two counts. Since "X"'s sentence on these charges may depend on his testimony in this case, his sentencing was reassigned to the judge in charge of the instant case. It has been scheduled to follow the conclusion of the trial in this case.

The hearing and presentence report puts "X," his relationship to the two incarcerated defendants, and the threat in a new light. Rather than being simply the blameless victim of extortion by the two defendants, "X" himself is a criminal. He has one prior conviction of conspiracy to transport obscene material in interstate commerce, 18 U.S.C. § 371, for which he was fined. He had an intimate social relationship with the defendants over a number of years; their families mingled in and outside their homes. "X"'s business benefited from the association since the defendants obtained and serviced customers for him; the defendants may have been instrumental in ensuring labor peace in his business. "X" may even be profiting financially from the defendants' incarceration, since he has retained the defendants' customers but stopped paying defendants' commissions.

"X" appears to have more resources for his own protection than the average citizen. He carries a gun, for which he has held a license for a number of years, and has a private collection of twenty guns. He has not availed himself of the government's witness protection program. He has the resources to provide, and apparently has arranged for, private protection. He can call upon the FBI when he feels threatened, as he did following the telephone calls of June 21st.

There are persons other than the defendants with a possible animus against "X."

That enmity might have been intensified upon publication of the news of the indictment in the present case, with the suggestion that "X" was cooperating in the prosecution in order to avoid punishment for his own crimes. He received a light sentence in an obscenity case because he cooperated with the government against a number of his former colleagues, who had been engaged with him in producing and distributing pornographic pictures depicting a variety of perversions. "X" has had two divorces and has little, if any, contact with his offspring. He "bought out" his business partner. He has avoided unionization despite apparent labor problems. He lives in a fine home on the waterfront with a 38–foot cabin cruiser at his adjacent private dock.

A person with "X"'s lifestyle and history might well have picked up enemies along the way other than the defendants. In addition, it is possible that one of Vitta's or Migliorisi's misguided friends spontaneously made the threats without the personal complicity of the defendants.

All of the above derogatory information about "X" strongly suggests that it is in the defendants' best interests to have "X" appear at trial. As a witness his credibility may be attacked and his demeanor observed by the jury. Based upon the court's observation of "X" during his testimony before it, a jury is likely to find "X"'s believability something less than perfect.

Lengthy pretrial detention has imposed upon the defendants the usual sorts of hardships and stigma that accompany imprisonment. The effects upon the defendants' families are illustrated by the insomnia of defendant Vitta's youngest son, and the difficulty of setting a wedding date for Vitta's affianced daughter while her father is detained pending trial. The effects felt by defendant Vitta have resulted in a stress-related heart attack suffered during his incarceration. These hardships have been inflicted upon a man whom the law presumes innocent until proven guilty. Vitta has been in prison before, after conviction for criminal usury, but a citation for

meritorious service that he received in 1983 from his community for risking his life to rescue neighbors from a burning building indicates that he still has some kind of reputation in the community that might be damaged by this lengthy incarceration.

Migliorisi has no prior criminal record. He and his family are also paying an emotional and financial price for his incarceration.

Neither defendant is a gentle soul. Both are capable of violence for their own and their associates' gain. They both reportedly threatened to viciously kill or beat "X" and members of his family, coercing him to pay them tribute for a number of years.

## II. LAW

### A. *Procedural Issues*

#### 1. *Jurisdiction*

A preliminary issue is whether the trial court has jurisdiction to hold a *de novo* hearing on the defendants' continued pretrial detention after affirmance by the Court of Appeals of the original detention order. Since the Court of Appeals affirmed without analysis and "a summary affirmance is an affirmance of the judgment only," *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977), the trial court lacks guidance on that court's rationale.

A summary affirmance is limited in effect to "prevent[ing] lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by [the] action[ ]." *Id.* The Rules of the Second Circuit specifically provide that dispositions by summary order "do not constitute formal opinions of the court and ... shall not be cited or otherwise used in unrelated cases" before any court. 2d Cir.R. § 0.23.

One avenue of inquiry in determining what issues the Court of Appeals necessarily decided is to determine the standard of review the Court of Appeals probably applied. Unfortunately the statutory scheme does not provide a standard. The Bail Reform Act, 18 U.S.C. § 3145(b), provides for

expedited appeal of detention orders, but is silent on the standard of review. *See also* Fed.R.App.P. 9 (an appeal of a release or detention order may be heard without briefs and upon "such papers, affidavits, and portions of the record as the parties shall present").

In the absence of statutory guidance, the Second Circuit has applied the "clearly erroneous" standard of review to district court findings that grounds exist to detain a defendant prior to trial under the Bail Reform Act of 1984. *See United States v. Gonzalez Claudio*, 806 F.2d 334, 338 (2d Cir.1986); *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir.1986); *United States v. Melendez-Carrion*, 790 F.2d 984, 994 (2d Cir.1986); *United States v. Martir*, 782 F.2d 1141, 1146–47 (2d Cir.1986); *United States v. Colombo*, 777 F.2d 96, 100 (2d Cir.1985). The Second Circuit has recently clarified the reach of the "clearly erroneous" standard—it applies to "the District Judge's findings of underlying historical facts and the consequent factual determination[s]," *United States v. Gonzalez Claudio*, at 342, but does not preclude the Court of Appeals from making a broader review of the application of the facts found to constitutional issues raised. *Id.; see also United States v. Zannino*, 798 F.2d 544, 546 (1st Cir.1986); *cf.* Monaghan, *Constitutional Fact Review*, 85 Colum.L.Rev. 229 (1985) (appellate courts must independently evaluate constitutional facts); *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (federal court may weigh facts found by state court differently in deciding constitutional claim).

In view of its enigmatic affirmance in this case, it is likely that the narrow issue the Court of Appeals determined was whether the detention order was based on findings of fact which were "clearly erroneous." Since the record contained a finding of a tape-recorded threat to a witness and other evidence that supports attribution of that threat to the defendants, summary affirmance was appropriate. When the Court of Appeals affirmed, trial was expected to commence during the fall of 1986. Therefore, it is unlikely that the Court of

Appeals considered the constitutional issue now raised—that excessively long pretrial detention in this case violates the defendants' rights guaranteed by the due process clause of the Fifth Amendment.

■ Where significantly changed circumstances raise a new issue of law, and additional evidence is proferred, a judicial officer has inherent power to reconsider his or her own order. *See* Federal Rule of Civil Procedure 60(b), which applies by analogy to federal criminal proceedings. *United States v. Colombo*, 616 F.Supp. 780, 783 (E.D.N.Y.), *rev'd on other grounds*, 777 F.2d 96 (2d Cir.1985); *cf.* Fed.R.Crim.P. 57 (in "all cases not provided for" in the Rules of Criminal Procedure, the court may proceed in any lawful manner); *cf.* Fed.R.Crim.P. 46(g) (requiring the court to "exercise supervision over the detention of defendants ... within the district pending trial for the purpose of eliminating all unnecessary detention"). The changed circumstances created by the setting of a March 1987 trial date, the proffer of evidence as to who other than the defendants may have had a motive to threaten the witness, and the opportunity to hear the witness' testimony, provide ample justification for the court's granting a *de novo* hearing on the motion for reconsideration.

Additionally, the Bail Reform Act of 1984 provides that "[t]he judicial officer may at any time amend his order to impose additional or different conditions of release." 18 U.S.C. § 3142(c). This section remains unchanged from the corresponding section of the 1966 Act. *See* 18 U.S.C. § 3146(e) (1982), *amended by* 18 U.S.C. § 3142(c) (Supp. IV 1985). That earlier act has been interpreted to authorize courts to entertain a motion to change a detention order to one granting release on conditions. *See Wood v. United States*, 391 F.2d 981, 984 (D.C. Cir.1968) ("the judges of the District Court ... have a broad discretion to amend the conditions imposed, or to grant release outright").

Congress has recommended that courts hold a hearing in the defendant's presence

upon a motion to amend release conditions. *See* Senate Report No. 225, 98th Cong., 2d Sess. at 16, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3199. [hereinafter Senate Report]. Motions to amend detention orders are generally based on new information or changed circumstances. *See United States v. Logan,* 613 F.Supp. 1227 (D.Mont.1985) (absent changed circumstances court refused to grant motion for reconsideration).

The Second Circuit has directed district courts to "fully reconsider a magistrate's denial of bail ... in ruling on a motion for revocation or amendment of a detention order [and] not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985). To aid in reaching an independent conclusion, the district court may schedule a *de novo* hearing before a magistrate or before a district judge. *See United States v. Leon,* 766 F.2d 77 (2d Cir.1985); *see also United States v. Ramey,* 602 F.Supp. 821, 822 (E.D.N.C.1985) ("duty of the district court to conduct a *de novo* hearing").

■ Where a detention order has been affirmed by the Court of Appeals, it apparently is necessary to hold a *de novo* hearing unless the district court can take judicial notice of relevant new factors or the parties stipulate to new evidence. A motion for reconsideration based solely on the previous record would seem to be precluded by the Court of Appeals' affirmance.

■ Here the district judge first referred the matter of reconsideration to the magistrate. The magistrate declined to hold a new hearing, apparently on the ground that in his opinion no significant new evidence was available. The district judge then held a bail hearing. Rules of evidence, except for privilege, do not apply to such a bail hearing. Fed.R.Evid. 1101(d)(3); *United States v. Golding,* 742 F.2d 840 (5th Cir.1984). While it was full, the hearing was, accordingly, relatively brief.

 2. *Release of the Witness' Presentence Report*

"X" 's presentence report contains information which could be used at trial to impeach his credibility. That information was also useful to the court in assessing "X" 's credibility at the detention hearing. The pattern of business and social relationships that the presentence report reveals may even provide exculpatory material on the extortion charges against the defendants here. Nevertheless, both the government and counsel to "X" resist disclosure of the presentence report to the defendants.

■ Presentence reports are confidential court documents prepared for the sentencing authority, not for the prosecutor's office. There is a strong policy of confidentiality to encourage candor in interviews by probation officers. *See, e.g., United States v. Charmer Industries, Inc.,* 711 F.2d 1164, 1175 (2d Cir.1983). Disclosure to a third person should not be authorized "in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice." *Id.* at 1175.

■ Because they are court documents, presentence reports do not fall strictly within the ambit of the *Brady* rule requiring disclosure "by the prosecution of evidence favorable to an accused ... where the evidence is material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). *See, e.g., United States v. Cyphers,* 553 F.2d 1064, 1069 (7th Cir.) (no prejudice from failure of court to disclose presentence report), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977); *United States v. Walker,* 491 F.2d 236, 238 (9th Cir.) (no exonerating evidence in report), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *United States v. Evans,* 454 F.2d 813, 820 (8th Cir.) (no abuse of discretion to deny access), *cert. denied,* 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972). Nor does a presentence report constitute a "statement" of a witness under the Jencks Act, 18 U.S.C. § 3500(e), which requires that statements of government witnesses be turned over to the defense for use in cross-examination at

trial. *See United States v. Dingle*, 546 F.2d 1378 (10th Cir.1976).

■ The *Brady* rule is a constitutional rule of due process, repeatedly interpreted by the Supreme Court as requiring the disclosure of impeachment material as well as material which is more directly exculpatory. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Impeachment evidence is "evidence favorable to an accused." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196. Its availability "may make the difference between conviction and acquittal." *Bagley*, 105 S.Ct. at 3380. Information useful in assessing credibility as well as in assessing the truth or falsity of a material proposition through evidence-in-chief is relevant. *See* Fed.R.Evid. 401. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

■ Failure to disclose under *Brady* will result in reversal "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 105 S.Ct. at 3384. This reasonable probability limitation, formulated within the context of a post-conviction attack on the validity of a conviction, is not applicable to a pretrial proceeding where the rest of the prosecution's evidence is unknown. At the trial and pretrial stages the court and prosecutor must treat as *Brady* material any relevant evidence—i.e., evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Doubt as to both evidence-in-chief and evidence on credibility must be resolved in favor of revelation before trial.

■ The testimony of "X" would be essential to prove extortion charges brought against the defendants. Potential impeachment material contained within "X"'s presentence report is *Brady* material. *See United States v. Figurski*, 545 F.2d 389, 391 (4th Cir.1976) ("importance of the witness to the government's case" must be considered in determining whether impeachment evidence must be revealed).

■ Since the evidence in the presentence report is relevant to guilt, due process requires its disclosure. The fact that the defendants made no request to the court for the witness' presentence report does not affect the result, since no formal request for such material needs to be made. *See Bagley*, 105 S.Ct. at 3384.

It is not critical to the due process determination that the court rather than the prosecution holds the information. The prosecutor's role "transcends that of an adversary." *Bagley*, 105 S.Ct. at 3380 n. 6. *A fortiori* that impartial role and responsibility rests on the court as well. It "is the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is ... that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

■ It would be unconscionable for a court, relying on the technical inapplicability of *Brady*, to refuse disclosure of evidence it knows to be exculpatory. Recognizing this rule, courts have established a policy of conducting *in camera* reviews of requested presentence reports. *See, e.g., United States v. Cyphers*, 553 F.2d 1064, 1069 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977); *United States v. Figurski*, 545 F.2d 389, 392 (4th Cir.1976); *United States v. Walker*, 491 F.2d 236, 238 (9th Cir.) (probation officer ordered to review report), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *United States v. Evans*, 454 F.2d 813, 819 & n. 13 (8th Cir.), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668

(1972). Such a review is necessary both to ensure the confidentiality of the document and to determine whether disclosure of the presentence report is "essential to effective presentation of a defense and therefore required in the interests of justice." *United States v. Cyphers*, 553 F.2d at 1069.

■ Without deciding whether the high standard of "compelling need" is to be imposed on presentence reports containing *Brady* materials, the court finds that that test is met in the instant case. Disclosure of the witness' presentence report to the defendants and the government is required by constitutional considerations.

The need for disclosure does not end the inquiry, for the subject of the presentence report and the process of compiling the report are also entitled to consideration. The Federal Rules of Criminal Procedure do not provide for the release of presentence reports to third parties. Federal Rule of Criminal Procedure 32(c)(3) requires the court to release presentence reports to defendants and counsel unless it determines that there is certain information which should not be disclosed, in which case the court must disclose a written summary of the facts to be relied upon in sentencing. No reported case and only two unreported cases have been found in which disclosure was made to third parties. *United States v. Bernstein*, CR–81–160 (E.D. N.Y. Jan. 12, 1982) (transcript of hearing at which court explained that it disclosed report to a third person in the interests of justice); *United States v. Gotti*, CR–85–178 (E.D.N.Y. Oct. 2, 1986) (transcript of hearing at which court disclosed presentence report of a witness to defendants). Most courts have concluded that Rule 32(c)(3) does not reach this question, and that the omission of a provision regarding disclosure to third parties does not affirmatively bar such disclosure. *See United States v. Charmer Industries*, 711 F.2d 1164, 1173 (2d Cir.1983) (citing cases).

■ Under the rule of *United States v. Fatico*, 441 F.Supp. 1285 (E.D.N.Y.1977), *rev'd*, 579 F.2d 707, 712 (2d Cir.), *on remand* 458 F.Supp. 388, 398 (E.D.N.Y.1978),

*aff'd*, 603 F.2d 1053 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), a person has the right before being sentenced to test the accuracy of adverse statements in the presentence report so that the sentence is not based on misinformation. *Accord United States v. Bass*, 535 F.2d 110, 121 (D.C.Cir.1976); *United States v. Needles*, 472 F.2d 652, 658 (2d Cir.1973); *United States v. Weston*, 448 F.2d 626, 634 (9th Cir.1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). A 1983 amendment to Federal Rule of Criminal Procedure 32(c)(3)(D) "requires the sentencing court, as to each matter controverted, either to make a finding as to the accuracy of the challenged factual proposition or to determine that no reliance will be placed on that proposition at the time of sentencing." Advisory Committee Note to 1983 Amendments to Fed.R. Crim.P. 32. "Decisions about appropriate procedures to ensure reliable information are left largely to the discretion of the sentencing judge." *Fatico*, 458 F.Supp. at 398. *See also United States v. Rosner*, 485 F.2d 1213, 1230 (2d Cir.1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Needles*, 472 F.2d at 658.

As a matter of fairness, the witness here, "X," should have the same opportunity to challenge adverse statements in his presentence report prior to its disclosure as he will have prior to sentencing; his welfare is at stake in this proceeding. Accordingly, the court arranged to have the witness' counsel present at the hearing on September 24th when it ordered the Probation Department to release the report to "X," so that counsel could review it with his client and determine whether to request a *Fatico*-type hearing. He has not requested such a hearing. The court will therefore assume the truth of statements made in the presentence report for the purpose of this bail hearing.

At a hearing on October 6th the court, having already been briefed by the Probation Department and counsel for "X," determined that release of the witness' pre-

sentence report under seal to the United States Attorney and to counsel for Vitta and Migliorisi was necessary for impeachment use at trial and for briefing on the motion to reconsider bail then pending before the court. The court ordered release of "X"'s presentence report subject to the limitation that its contents not be revealed to any other person without permission of the court. The report has been redacted to eliminate references which might lead to members of "X"'s family.

### 3. *Reliance by the Court on the Witness' Grand Jury Testimony*

The court has necessarily relied upon an *in camera* review of the witness' grand jury testimony in making its bail determination. In part, "X"'s testimony has been revealed in this opinion, but the transcript of his testimony has not been released. Fed.R.Crim.P. 6(e). The defendants have not met the heavy burden of showing that the grand jury transcripts are "needed to avoid ... possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) (footnote omitted).

 Reliance upon an *in camera* review of a witness' grand jury testimony in making a bail determination is entirely appropriate in cases involving a threat to a witness, particularly where the grand jury testimony and the hearing testimony of the witness may be relevant on the credibility issue. *Cf. United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986). Disclosure of a few details of that testimony in a judicial opinion supporting the court's rationale for granting release on bail does not violate the rule of grand jury secrecy embodied in Federal Rule of Criminal Procedure 6(e). *See Douglas Oil Co. of California*, 441 U.S. at 222, 99 S.Ct. at 1674 ("only material so needed").

 The Supreme Court has "emphasize[d] that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 1556 (1979); *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323, *reh'g denied*, 361 U.S. 855, 80 S.Ct. 42, 4 L.Ed.2d 94 (1959). Disclosure may be ordered with protective limitations on the use of the disclosed material. *See Douglas Oil Co., supra*, 441 U.S. at 223, 99 S.Ct. at 1675. The converse—nondisclosure with the exception of certain facts pertinent to a bail determination—is equally within the discretion of the trial court. Since the grand jury minutes in question are those of the very case before the trial court, partial release is well within the trial court's discretion. *Cf. Douglas Oil Co., supra*, 441 U.S. at 230, 99 S.Ct. at 1678–79.

### B. *Detention Based on Threat to Witness*

#### 1. *Trial Court's Power*

 A trial court has "broad powers to ensure the orderly and expeditious progress of a trial." *Bitter v. United States*, 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967). Pursuant to those powers, it may revoke bail and remit defendants to custody. *Id. See also Fernandez v. United States*, 81 S.Ct. 642, 644, 5 L.Ed.2d 683 (1961) (Harlan, Circuit J.).

Protection of witnesses is fundamental to the proper administration of justice. Detention of a defendant during trial has long been constitutionally permitted upon proof that the defendant obstructed justice by intimidating witnesses or jurors. *See Carbo v. United States*, 82 S.Ct. 662, 668, 7 L.Ed.2d 769 (1962) (Douglas, Circuit J.); *United States v. Bentvena*, 288 F.2d 442, 444–45 (2d Cir.1961).

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, provides statutory authority for a judge to deny bail before trial where proof of a threat to prospective witnesses

is established at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). The Second Circuit has implicitly upheld the constitutionality of such pretrial detention where risk of harm to a witness is demonstrated. *United States v. Leon,* 766 F.2d 77 (2d Cir. 1985).

The power to incarcerate before trial "must be exercised with circumspection. It may be invoked only when and to the extent justified by danger which the defendant's conduct presents or by danger of significant interferences with the progress ... of the trial." *Bitter v. United States,* 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967).

Relying on a threat to a witness in order to detain a defendant assumes that the defendant directly or indirectly made or poses the threat. If a defendant's "denial of personal complicity were credited, the District Judge could not find that his release would interfere with justice...." *United States v. Gilbert,* 425 F.2d 490, 492 (D.C.Cir.1969). If the court found that associates of the defendants posed a threat, it "might be able to restrain those who thought they were doing him a good turn." *Id.* There is, on the facts of the instant case, considerable doubt whether either defendant is responsible for the telephoned threat to "X." Nevertheless, without deciding how light the burden of proof must be on this issue, we assume, for the purposes of this discussion, that the threat was made at the behest of both defendants.

### 2. *Severity of Threat*

▉ Any fair evaluation of the danger that a threat to a witness will be carried out must take account of the rational benefits the threatener would expect to gain by intimidation or elimination of the witness. The court must consider whether a defendant would believe that it is in his interest to have the witness appear at trial, where the witness' credibility may be attacked and his demeanor observed by the jury. In this case, there are several prominent circumstances which make it in the defendants' best interests to ensure the witness' pres-

ence at trial. The severity of the alleged threat is thus greatly diminished.

#### a. *Admission of Grand Jury Testimony*

▉ The defendants have been warned that if "X" is unavailable for trial and it can reasonably be concluded that his absence resulted from the activities of the defendants or their associates, the court will admit at trial "X"'s grand jury testimony. *See United States v. Mastrangelo,* 693 F.2d 269, 273 (2d Cir.1982), *on remand,* 561 F.Supp. 1114 (E.D.N.Y.), *aff'd,* 722 F.2d 13 (2d Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984). In *Mastrangelo,* a murdered witness' grand jury testimony was admitted. A preponderance of the evidence indicating the defendants' complicity in securing the witness' absence is all that is necessary for the court to find that the defendants have waived their confrontation rights, thus allowing the admission of the witness' prior grand jury testimony. *Id.* at 273.

"X"'s highly incriminatory grand jury testimony would probably be far more damaging to the defendants than his testimony at trial, where he will be subject to full cross-examination. The defendants' attorneys acknowledged this proposition at the hearing. They have advised their clients accordingly.

#### b. *Admission of Testimony at Hearing*

"X" testified at the bail hearing out of the presence of the defendants. As in the case of his grand jury testimony, his evidence was highly incriminating of the defendants. The defendants are aware that "X"'s testimony at the bail hearing would be admissible at trial if "X" is unavailable. This fact also points to "X"'s availability at trial as being in the defendants' best interests.

▉ While "X" was subjected to cross-examination, that cross-examination would probably have been more effective before a petit jury who could observe "X"'s demeanor when confronted by the defendants in open court. Nevertheless, if "X" is unavailable at trial, his testimony will be ad-

missible as former testimony, since the defendants "had an opportunity and similar motive to develop the testimony by ... cross ... examination." Fed.R.Evid. 804(b)(1). *See also Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (previous testimony of deceased witness admissible at second trial); *Reynolds v. United States,* 8 Otto 145, 158, 98 U.S. 145, 158, 25 L.Ed. 244 (1878) (defendant waived his confrontation rights; witness' testimony in prior trial admissible where his absence was wrongfully procured by defendant).

The defendants' Sixth Amendment right to confront "X" guaranteed their right to be present and to cross-examine him at the bail hearing. After being informed by the court of their right to be present, the defendants waived that right on the record in open court and executed written waivers. These waivers are binding. *United States v. Crutcher,* 405 F.2d 239, 243 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); *Cross v. United States,* 325 F.2d 629, 631 (D.C.Cir.1963), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *Cf. Illinois v. Allen,* 397 U.S. 337, 343–44, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970) (waiver by disruption); Fed.R.Crim.P. 15(b) (defendant has a right to be present at depositions taken by the government "unless the defendant waives in writing the right").

The government would not need to demonstrate that the unavailability of "X" at the trial was due to the "procurement or connivance of the defendant[s]." *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). Under Federal Rule of Evidence 804(a), it would be enough to show that "X" "was not unavailable ... due to the procurement or wrongdoing" of the government. *Cf. United States v. Pizarro,* 756 F.2d 579, 582–83 (7th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985). The defendants' attorneys are well aware of this evidentiary rule on the admission of prior testimony. They should advise their clients

of it, thus further ensuring the availability of "X" at trial.

### c. *Consciousness of Guilt*

Were the government able to demonstrate at trial that any further threats or injuries to "X" were the result of the defendants' activities, this spoliation would constitute strong evidence of guilt on the indicted charges. *See, e.g., United States v. Gonzalez,* 703 F.2d 1222 (11th Cir.1983) (threats to witness); *United States v. Gonsalves,* 668 F.2d 73, 75 (1st Cir.) (threats to hostile witness), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1759, 79 L.Ed.2d 168 (1982); *United States v. Anderson,* 575 F.Supp. 31, 33 (S.D.N.Y.1983) (tape-recorded death threat). Whether the threat already uttered can be attributed to the defendants sufficiently to warrant admission is a matter that need not now be decided. *Cf. United States v. Check,* 582 F.2d 668, 685–86 (2d Cir.1978) ("clear need" for prosecution's case must be shown). Any further threats or any harm to "X" traced to the defendants would, of course, have an effect adverse to the defendants in deciding whether to attribute the past threat to them. Threats to a witness by a defendant are, next to a confession, about as damning as any evidence ever available at trial.

Were the defendants to procure harm to "X," and were the crime laid at their doorstep, acquittal would be next to impossible. Moreover, the penalty imposed in sentencing would be punitive in the extreme. This factor too must be deemed to enter into the calculations of the defense counsel and their clients that harm to "X" will not help them.

### d. *Power of Detention to Diminish Threat*

The defendants' enhanced capability to harm the witness were they released from jail must be evaluated in determining the necessity of incarceration. It is doubtful that continued detention of the defendants substantially decreases the risk of harm to the witness. If, as the government alleges, the defendants are part of an

organized crime syndicate, they hardly need to be released from prison in order to inflict harm on the witness. Whether in or out of jail, the defendants would presumably not themselves attempt to injure or intimidate "X." They would undoubtedly command more subtle methods that could be signaled from jail by telephone or through visitors.

The circumstances here are unlike those in *United States v. Colombo*, 616 F.Supp. 780, 785 (E.D.N.Y.), *rev'd*, 777 F.2d 96 (2d Cir.1985), where the issue was whether the incarceration of the alleged leader of a criminal organization would decrease his ability to endanger the community generally. In *Colombo* the trial court ruled that detention of a criminal overlord could inhibit the effectiveness of the organization as a whole. *Id.* In this case, on the other hand, the court is faced not with a criminal boss, but with two alleged underlings. The asserted threat is not that of a criminal syndicate to the community, but of a specific harm to a particular individual. Under these circumstances incarceration offers no guarantee against retaliatory action. The matter would be quite different had there been any proof that these were enraged defendants whose rationality was so overwhelmed by anger that a mad-dog attack would be probable if they were released.

### 3. Other Grounds for Detention

■ The other possible grounds for holding the defendants without bail—risk of flight and danger to the community—are not present. The Magistrate found no risk of flight. Both defendants are native New Yorkers who are head of households; they have well-established community ties and steady employment histories. There have been no allegations that either represents a danger to the community at large.

### 4. Due Process Analysis

A trial court is obligated to examine the constitutional implications of detention in the context of changed circumstances. One significant area of inquiry is the effect of prolonged detention on due process. As is indicated in the discussion which follows, fixed, chronological parameters are not possible. Nevertheless, any pretrial detention of more than 90 days exceeds what Congress contemplated, and a pretrial detention of more than six months should flash a warning that a violation of due process has probably occurred.

### a. Punishment vs. Regulation

■ Under the due process clause of the Fifth Amendment a defendant may not be punished prior to an adjudication of guilt conducted in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright*, 430 U.S. 651, 671–672 n. 40, 674, 97 S.Ct. 1401, 1412–13 n. 40, 1414, 51 L.Ed.2d 711 (1977); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165–67, 186, 83 S.Ct. 554, 565–67, 576, 9 L.Ed.2d 644 (1963); *Wong Wing v. United States*, 163 U.S. 228, 237, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896).

■ Defendants can, nevertheless, be detained under the Bail Reform Act without many of the procedural protections ordinarily guaranteed by the due process clause when they are incarcerated for an acceptable regulatory reason, rather than for punishment of a delict. The decision to detain for regulatory purposes does not require proof of a threat beyond a reasonable doubt, is not subject to Sixth Amendment jury guarantees, and does not provide for the defendant's right to confront and cross-examine witnesses. A defendant may in fact be detained by the court on the basis of double or triple hearsay. *See United States v. Accetturo*, 783 F.2d 382, 393 (3d Cir.1986) (Sloviter, J., dissenting). A defendant thus may be incarcerated without the many constitutional and evidentiary protections normally guaranteed those who are to be punished pursuant to judicial proceedings.

■ Pretrial detention is considered regulatory rather than punitive when initially imposed to protect the safety of a prospective witness. *But cf. United States v. Melendez-Carrion*, 790 F.2d 984 (2d Cir.

1986) (pre-trial detention punitive and unconstitutional when imposed on grounds of defendant's alleged "dangerousness" to the community at large). Due process implications change considerably, however, when such detention is prolonged for such an extended period of time as to become punitive in effect. "[L]engthy delay can transform what might otherwise be a valid regulatory measure into one that is punitive regardless of Congress' stated intentions." *Id.* at 1007 (Feinberg, C.J., concurring in judgment).

▇▇▇ "[T]he mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment.... Even given, therefore, that pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement ... are in fact compatible with those purposes." *Schall v. Martin,* 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984). Thus, pretrial detention should be imposed in the least restrictive manner possible, only to the degree necessary to vindicate the non-punitive aims of such detention. *Id.; Bell v. Wolfish,* 441 U.S. 520, 537–38, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). The legislative history of the Bail Reform Act reflects Congress' understanding that though pretrial detention is not *per se* unconstitutional, it may be constitutionally infirm if accompanied by inadequate procedural safeguards or if detention is not limited to those cases where it is necessary to serve compelling societal interests. Senate Report at 8, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3191.

b. *Length of Detention*

▇▇▇ Otherwise valid pretrial detention does assume a punitive character, and thus offends the due process clause, when it is significantly prolonged. Such incarceration is "rendered so harsh by its length that it ... degenerates into punishment." *Melendez-Carrion,* 790 F.2d at 1008 (Feinberg, C.J., concurring). *See also United States v. Gonzalez Claudio,* 806 F.2d 334

(2d Cir.1986); *United States v. Salerno,* 794 F.2d 64, 78 (2d Cir.) (Feinberg, C.J., dissenting), *cert. granted,* —— U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986); *United States v. Theron,* 782 F.2d 1510, 1516 (10th Cir.1986); *United States v. Colombo,* 616 F.Supp. 780, 786 (E.D.N.Y.), *rev'd on other grounds,* 777 F.2d 96 (2d Cir.1985).

Every court that has addressed the matter has decided that, despite Congress' silence on the issue in the Bail Reform Act, due process may be violated by reason of a prolonged extension of pretrial incarceration. *United States v. Zannino,* 798 F.2d 544, 548 (1st Cir.1986); *United States v. Perry,* 788 F.2d 100, 118 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986); *United States v. Accetturo,* 783 F.2d 382, 387–88 (3d Cir.1986); *United States v. Theron,* 782 F.2d 1510, 1516 (10th Cir.1986); *United States v. Portes,* 786 F.2d 758, 768 (7th Cir.1985); *United States v. LoFranco,* 620 F.Supp. 1324, 1325 (N.D.N.Y.1985), *app. dism'd,* 783 F.2d 38 (2d Cir.1986); *United States v. Hall,* 651 F.Supp. 13 (N.D.N.Y.1985); *United States v. Hazzard,* 598 F.Supp. 1442, 1451 n. 5 (N.D.Ill.1984).

In *United States v. Colombo,* 777 F.2d 96 (2d Cir.1985), the Second Circuit explicitly agreed with this court that in some circumstances where the Speedy Trial Act does not work to protect against lengthy incarceration, "the length of a defendant's pretrial detention might not survive a proper due process challenge." *Id.* at 101–102. And although the appellate court in *Colombo* overturned this court's release of the defendant because it would not accept this court's estimate of the time the defendant would be incarcerated before trial, it concurred that length of imprisonment is a significant factor that must be considered by the trial court in establishing the constitutionality of pretrial detention. *Id.* (See the discussion below, infra at 343, of the time Colombo actually was detained prior to trial.) Similarly, while the Circuit affirmed the denial of bail in *United States v.*

*Berrios-Berrios,* 791 F.2d 246 (2d Cir.1986), it unambiguously implied that length was a factor to be considered in assessing the soundness of detention orders on a case-by-case basis. *Id.* at 252–53 & n. 5. Even in the case where "the enforcement of due process limits upon the duration of preventive detention creates the risk that a person accused of crime may avoid a trial" because of the likelihood that he may flee, the due process infringement of prolonged detention can at some point be "of at least equal gravity," mandating release. *United States v. Gonzales Claudio,* 806 F.2d 334, 343 (2d Cir.1986).

The stakes in federal pretrial detentions are usually higher, and the disabilities more severe, than those imposed in the juvenile detention system accepted as constitutional in *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Detention under the Bail Reform Act is not limited to a discrete, brief period, as it was in *Schall.* 467 U.S. at 269–70, 104 S.Ct. at 2413. Moreover, unlike the juvenile system, those held in pretrial detention in this circuit are, as is indicated below, not kept in facilities separate from those serving sentences or awaiting transfer after conviction to another place of incarceration.

### c. *Nature of Burdens and Harms Caused by Pretrial Detention*

■ It seems obvious that detained defendants should be allowed as much liberty as is consistent with the limited purpose of their detention, including relatively free access to family, attorneys, and recreational and educational opportunities. *See* Duke, *Bail Reform for the Eighties: A Reply to Senator Kennedy,* 49 Fordham L.Rev. 40, 79 (1980). Perhaps it should be equally obvious that detainees "should be housed in facilities separate from convicted prisoners, under conditions appropriate to the function of their detention. . . ." *Id. See also* Schlesinger, *Bail Reform: Protecting the Community and the Accused,* 9 Harv.L. & Pub.Policy 173, 194 (1986). *Cf.* 18 U.S.C. § 3142(c)(2) (pretrial release should be "subject to the least restrictive further condition, or combination of condi-

tions, that [the judicial officer] determines will reasonably assure . . . the safety of any other person and the community").

■ The Bail Reform Act requires that pretrial detention be imposed in a place of commitment "separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal." 18 U.S.C. § 3142(i)(2). When such facilities are not available, detainees are denied the liberty consistent with the limited purpose of that detention. When such treatment is extended over a long period of time, it becomes indistinguishable from the punishment regularly imposed on prisoners who have been convicted, and hence ceases to be merely "regulatory."

■ In this district, defendants are detained prior to and during trial in the Metropolitan Correction Center, alongside criminals incarcerated subsequent to conviction pursuant to due process of law. Overcrowded conditions were observed by this court in the course of its inspection of the Center. Visiting hours and recreation are quite restricted. Moreover, opportunities to meet with counsel and to examine tapes and written documents, and to assist in preparation for trial, are severely limited. The court may take judicial notice of such prison conditions affecting the administration of justice. *See* Fed.R.Evid. 201; *cf. United States v. Gorham,* 523 F.2d 1088, 1096 (D.C.Cir.1975) ("a fact he had come to know through performance of his official duties"), *supp. op.* 536 F.2d 410 (D.C.Cir. 1976).

### i. *Stigma and Burdens on Defense*

The inevitable consequences of pretrial incarceration, particularly when prolonged beyond a short period, are undeniably severe. They constitute a pattern of harms that we traditionally consider punitive, rather than merely regulatory. The morale and demeanor of the detainee are bound to deteriorate substantially, reflecting his or her idleness, isolation, and exposure to the vagaries of prison and the jailhouse crowd. *See* Wald, *Pretrial De-*

*tention and Ultimate Freedom: A Statistical Study—Foreward,* 39 N.Y.U.L.Rev. 631, 632 (1964). It is not surprising that such detainees are susceptible to heightened anxiety, depression, hostility and bitterness over their being kept from their family and social life. They are subjected to great stress, and invariably faced with social stigmatization. *See* Schlesinger, *Bail Reform: Protecting the Community and the Accused,* 9 Harv.J. of L. & Pub. Policy 173, 176 (1986).

The quality of the detainee's legal defense is likely to diminish dramatically as long as he or she is incarcerated. The interlude between arraignment and trial is "perhaps the most critical period of the proceedings ... when consultation, thoroughgoing investigation and preparation .... [are] vitally important...." *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). As an esteemed jurist has noted:

> During this period, defense counsel is retained or assigned, negotiations for dismissal or reduction of charges are carried on, indictments are handed down, motions to sever, to dismiss, to remove, to change venue, and to discover are argued, pleas are settled upon, witnesses are interviewed, evidence is sought, strategy is planned, and presentence reports may be written.
>
> A defendant free on bail or on his own recognizance can make good use of this liberty. He is available on a twenty-four hour basis to consult and participate fully with counsel in time-consuming preparations for trial. He alone may be able to locate and persuade defense witnesses to testify. He is often the key source of factual details on which to base pretrial motions and negotiations. He can assist in tracking down evidentiary leads.
>
> Authorities recognize that prior detention hobbles adequate preparation for trial.

Wald, *supra,* 39 N.Y.U.L.Rev. at 633 (footnotes omitted).

In addition to these clear and egregious disadvantages imposed on detained defendants, courts must also consider the basic issue of defense costs. Expenses are artifically increased by the constrained circumstances under which defendants and counsel must meet to prepare the defense outside counsel's office. A defendant's ability to provide for counsel of his or her own choosing and to pay for more than minimal expenditures of counsel's time are greatly impeded by the defendant's forced unemployment. All of these factors insure that the quality of the defendant's legal defense will be diluted at best, and possibly be rendered inadequate, by extended pretrial incarceration.

### ii. *Cumulative Effects*

All of these hardships, including deterioration of morale, demeanor, finances, resources, reputation, and quality and thoroughness of legal defense, may combine to disadvantage the defendant at the judgment and sentencing stages of the proceedings. As to judgment, studies have indicated that detention is likely to increase the chances of conviction at trial. *See, e.g.,* Koza and Doob, *The Relationship of Pretrial Custody to the Outcome of the Trial,* 17 Crim.L.Q. 391 (1975); Note, *A Study of the Administration of Bail in New York City,* 106 U.Pa.L.Rev. 693, 727 (1958). *But cf.* Wheeler and Wheeler, *Bail Reform in the 1980s: A Response to the Critics,* 18 Crim.L.Bull. 228 (1982).

Defendants who have been incarcerated prior to and during trial are likely to exhibit a much less appealing demeanor and much less persuasive or thorough legal defense than those defendants who have been at liberty. It is not the fact of detention, but the effects of detention on the defendant's demeanor and defense, that probably accounts for part of the correlation between detention before trial and conviction rates. Certainly the depression and general deterioration of morale resulting from long-term pretrial incarceration is likely to increase the pressure to plea bargain in order to "get it over with." *See* Note, *A Study of the Administration of Bail in*

*New York City,* 106 U.Pa.L.Rev. 693, 726 (1958).

As to the eventual sentence imposed, it is generally agreed that a causal relationship exists between detention and unfavorable disposition. *See* Wheeler and Wheeler, *supra,* 18 Crim.L.Bull. at 231–35; Wald, *supra,* 39 N.Y.U.L.Rev. at 631 n. 1, and sources cited therein. Even where all other factors are held constant, studies indicate that detention increases the chances of harsher and longer sentences. Rankin, *The Effect of Pretrial Detention,* 39 N.Y. U.L.Rev. 641 (1964). One obvious reason for this difference is that a defendant who has spent considerable time in jail before sentence cannot rely on the favorable circumstances of demonstrated non-criminal conduct prior to sentence or of a continuing job or family or community relationship that tends to make it more likely that future conduct will be lawful.

There is, in addition, evidence that the *longer* the period of detention before disposition, the greater the likelihood of a prison sentence, because of the cumulative effects of detention on the defendant's demeanor and defense. Wald, *supra,* 39 N.Y.U.L. Rev. at 635.

Effectively, then, a long period of pretrial detention becomes punitive, even where that was not the intent of such detention. Justice Stevens has provided a helpful rule of thumb for distinguishing regulatory and punitive detention. Whereas punitive sanctions entail "significant backward-looking, personal and normative components," regulatory detention has, by contrast, a focus that is "essentially forward looking, general, and non-normative, ... impl[ying] no moral judgment about the person affected." *Bell v. Wolfish,* 441 U.S. 520, 581–82 n. 10, 99 S.Ct. 1861, 1896 n. 10, 60 L.Ed.2d 447 (1979) (Stevens, J., dissenting). In cases of prolonged pretrial detention, what was originally meant to be non-normative becomes normative in fact. Detained defendants are stigmatized, disheartened, and made to suffer great hardships that would normally be associated with punitive sanctions. What is worse, they are then more likely, as a result of

their detention, to be sanctioned in a more punitive manner if and when they are convicted.

### 5. *Need for Balancing, with Emphasis on Time Served*

There is no bright line demarcating the point at which due process deprivations militate in favor of release. *United States v. Gonzales Claudio,* 806 F.2d 334, 340 (2d Cir.1986); *United States v. Melendez-Carrion,* 790 F.2d at 1008 (Feinberg, C.J., concurring); *United States v. LoFranco,* 620 F.Supp. 1324, 1325 (N.D.N. Y.1985) ("no clear line"). The conditions of incarceration, particularly its length, must be considered and balanced along with all of the other exigencies of the particular case, on an individualized, case-by-case basis. Due process is subject to "flexible standards." *United States v. Gonzales Claudio,* 806 F.2d at 343. *See also United States v. Accetturo,* 783 F.2d 382, 383 (3d Cir.1986) ("flexible concept"). At some point during detention, it is conceded by all courts that have addressed the issue, pretrial incarceration "will be unpalatable to our notions of fundamental fairness which underlie due process," but there is no "firm timetable" for establishing where that point might be. *Id.* at 395 (Sloviter, J., dissenting). Due process judgments should reflect numerous factors, including most prominently (but not exclusively) the length and hardships caused by detention, the severity of the threat if the defendant should be released, the type of threat allegedly posed by the defendant, and any more closely tailored alternative regulatory measure which might be used to secure against the predicted harm in a less restrictive manner.

Because the weighing of these evaluations is so delicate and complex, it follows that the balance may change over time in each case. The elements may change qualitatively or quantitatively, new factors may be introduced, and the court may reevaluate former evidence now seen in a different light. In many cases, "the evidence admitted at the initial ... hearing,

evaluated against the background of the duration of pretrial incarceration ... may no longer justify detention." *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir.1986).

An initial denial of bail should not, therefore, prejudice a defendant petitioning for release at a subsequent time on due process grounds. Circumstances (particularly the length and burden of the detention itself) invariably will affect the fragile balance differently as time goes by. *Id.* The length of detention must be, as the courts have unanimously agreed, a significant factor in the trial court's balancing of safety and due process concerns.

Because of the complex nature of bail decisions, the length of detention cannot be given a "fixed weight" in the balancing process. *Cf. United States v. Zannino*, 798 F.2d 544, 548–49 (1st Cir.1986). In many circumstances, courts have found a due process violation where the duration of pretrial detention was well under a year. *See, e.g., United States v. Melendez-Carrion*, 790 F.2d 984, 1008 (2d Cir.1986) (Feinberg, C.J., concurring) ("general requirements of due process compel us to draw that line well short of the eight months involved here [at time of appeal]"); *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir.1986) (four months at the time of appeal already violative of due process unless trial commences swiftly); *United States v. Accetturo*, 783 F.2d 382, 392–96 (3d Cir. 1986) (Sloviter, J., dissenting) (probable due process violation where defendants would be incarcerated six months at the start of trial); *United States v. Hall*, 651 F.Supp. 13 (N.D.N.Y.1985) (ordering release where defendant already detained over six months); *United States v. LoFranco*, 620 F.Supp. 1324, 1326 (N.D.N.Y.1985) (ordering release where defendant would have been incarcerated at least nine and one-half months at start of trial).

There may be circumstances under which even extended pretrial detention might not violate due process. *See, e.g., United States v. Berrios-Berrios*, 791 F.2d 246, 252–53 (2d Cir.1986) (upholding detention of defendant incarcerated eight months at time of appellate decision); *United States v. Colombo*, 777 F.2d 96, 100–101 (2d Cir. 1985) (overruling release of defendant detained seven months at time of appellate decision); *United States v. Zannino*, 798 F.2d 544, 548–49 (1st Cir.1986) (overruling release of defendant incarcerated sixteen months at time of decision; ordering detention for short, discrete, additional time; however, sixteen months would usually "exceed due process limitations"); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir.1986) (upholding detention where defendant would have been incarcerated six months at commencement of trial); *United States v. Portes*, 786 F.2d 758, 768 (7th Cir.1986) (upholding detention of defendant incarcerated six months at time of appeal). *Cf. United States v. Gonzales Claudio*, 806 F.2d 334, 336 (2d Cir.1986) (ordering release of defendants detained fourteen months, but noting that "the due process issue is not to be resolved solely on the basis of the duration of pretrial confinement").

The release decision is appropriately left largely to the discretion of the trial court. It is well settled in the Second Circuit that the "clearly erroneous" standard applies to "a District Court's determination that grounds exist to detain a defendant prior to trial" under the Bail Reform Act of 1984. *United States v. Gonzales Claudio*, 806 F.2d 334, 338 (2d Cir.1986). *See also United States v. Gotti*, 794 F.2d 773, 778 (2d Cir.1986); *United States v. Melendez-Carrion*, 790 F.2d 984, 994 (2d Cir.1986); *United States v. Martir*, 782 F.2d 1141, 1146–47 (2d Cir.1986); *United States v. Colombo*, 777 F.2d 96, 100 (2d Cir.1985); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985) (same standard applies when findings favor defendant). This is especially true where narrow issues of fact are decisive, such as risk of flight or danger to a witness or juror. *Cf. Melendez-Carrion*, 790 F.2d at 994 (broader scope of review on questions of danger to community, since those determinations involve legal interpre-

tations to a greater extent than in threat and flight questions).

The primacy of trial court expertise and discretion is also strongly supported by the congressional history of the Act. The Senate Report repeatedly justified the bill on the ground that it would enhance trial court authority. *See, e.g.*, Senate Report at 5, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3188 (old law provided "too little flexibility to judges in making appropriate release decisions," and denied judges "the tools to make honest and appropriate decisions regarding ... release") (quoting Final Report of the Attorney General's Task Force on Violent Crime 50–51 (August 17, 1981)); *id.* at 6, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3189 ("how to change ... laws to provide appropriate authority to deal with dangerous defendants seeking release"); *id.* at 19, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3202 (Committee has "for the most part, refrained from specifying what kinds of information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgment of the courts acting on a case-by-case basis)". *See also* Feinberg, *Promoting Accountability in Making Bail Decisions: Congressional Efforts at Bail Reform*, delivered at Conference on Public Danger, Dangerous Offenders and the Criminal Justice System, Harvard University, Feb. 11–12, 1982 (judicial notice taken; on file in the Clerk's Office, U.S.D.C., E.D. N.Y.).

The Bail Reform Act is apparently the first authorization of pretrial detention in this country that does not explicitly limit that detention to a fixed period of time. Some perspective is obtained by viewing the matter in light of historical precedents. The 1970 District of Columbia bail statute that was the prototype for the Bail Reform Act of 1984 provides for pretrial detention limited to sixty days' duration. D.C.Code 1973, § 23–1322(d)(2)(A). This time limit was integral to the procedural protections that convinced the District of Columbia courts that the statute's detention provisions are constitutional. "Significantly, pretrial detention is clearly circumscribed.... Such detention is not to exceed 60 days, by which time either the detainee must be brought to trial, or bail must be set." *United States v. Edwards*, 430 A.2d 1321, 1333 (D.C.App.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). Even the much-criticized 1969 Justice Department bail proposal would have established a 60–day limit for pretrial detention. This limit was cited by the attorney general as one of the central features "mitigating the burden of confinement" in order to render the proposed bill constitutionally sound. Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention*, 55 U.Va.L.Rev. 1223, 1239 (1969).

Other democratic nations which permit pretrial detention enforce fairly strict time limits. For example, the sixty-day or two month rule governs most cases of pretrial detention in Japan and France, with limited exceptions for continued detention. Both of those countries also permit detention during the criminal investigation, but strictly limit such detention to a period of a few days. *See* The French Code of Criminal Procedure, arts. 138 and 139 (1964 ed.) (G. Kock trans.); Keisoho, (Japanese Code of Criminal Procedure), arts. 60 and 208 (art. 208 limits investigative detention to ten days); *see also* Vouin, *Provisional Release in French Penal Law*, 108 U.Pa.L. Rev. 355, 357–60 (1960); Dando and Tamiya, *Conditional Release of an Accused in Japan*, 108 U.Pa.L.Rev. 323, 324 (1960). In France, first offenders in lesser crimes who are French citizens are entitled to release after only five days. French Code of Criminal Procedure art. 138. In Canada, review of the status of a pretrial detainee must occur within ninety days for major crimes, and within thirty days for lesser offenses. Appeal of a detention order is also available at any time prior to trial. *See* Martin's Annual Criminal Code §§ 457.5(1), 459 (1985). In the Federal Republic of Germany the grounds for pretrial detention must be reviewed after ninety days, and extension of preliminary detention beyond six

months may be had "only if the peculiar difficulty or the peculiar extent of the investigations" justifies it. The German Code of Criminal Procedure, art. 121 (1965 ed.) (H. Niebler trans.). The institution of money bail is rarely used in Scandinavian countries, and Sweden has outlawed it because "it is considered to lead to inequality before the law." Bratholm, *Arrest and Detention in Norway*, 108 U.Pa.L.Rev. 336, 348 (1960). In some of the Scandinavian countries, the absence of a bail alternative has led to high rates of detention, while in others the rate is low because release on the condition that the defendant report regularly to the police is used as an effective substitute. *See id.* at 341–43.

While practice with respect to pretrial detention is far from uniform internationally, it is clear that any democratic society must be concerned with the need to avoid lengthy pretrial detention. The United States, with its written constitution and emphasis on protection of defendants' rights, should be strongly motivated not to reduce its protections below the minimums of other democratic societies.

The motivating concern for limiting the length of pretrial detention in this country is the presumption of innocence. Even where a violation of the law for contempt of court is clear, our system puts severe time limits on detention. A recalcitrant witness, who has the power to unlock the jailhouse door, may be held only for a limited time. *See* 28 U.S.C. § 1826. Without a jury trial, contempts of court have been limited to a punishment of six months, the maximum sentence for a "petty offense" under federal law. *See* 18 U.S.C. § 1 (defining "petty offense"); *see also Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Cheff v. Schnackenberg*, 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966) (federal courts may not impose sentences exceeding six months for criminal contempt); *United States v. Barnett*, 376 U.S. 681, 694 n. 12, 84 S.Ct. 984, 991–92 n. 12, 12 L.Ed.2d 23 (1964) (six months may be constitutional limit as "the severity of the penalty imposed ... might entitle a defendant to the benefit of a jury trial"); *District of Columbia v. Clawans*, 300 U.S. 617, 628, 57 S.Ct. 660, 662–63, 81 L.Ed. 843 (1937) (rule is traceable to English and American colonial statutes governing petty offenses triable without a jury).

There is no suggestion that Congress ever considered the constitutionality of long pretrial detention under the Bail Reform Act of 1984, presumably because it assumed that such concerns were *de facto* allayed by the conjunction of the Bail Reform Act and the Speedy Trial Act. The Senate Report on the Comprehensive Crime Control Act of 1984 noted:

> One element of the District of Columbia Code Provision not carried forward in [the Bail Reform Act] is its 60–day limitation on the detention period which ... specifically requires that priority be given to a case in which the defendant is detained, and also requires that his trial must, in any event, occur within 90 days, subject to certain periods of excludable delay.... These current limitations [in the Speedy Trial Act] are sufficient to assure that a person is not detained pending trial for an extended period of time.

Senate Report at 22 n. 63, *reprinted in* 1984 U.S. Code Cong. & Ad.News at 3205. In its deliberations on the Bail Reform Act, the Senate Judiciary Committee rejected an amendment to the Speedy Trial Act that would have altered the time period in which a detainee must be brought to trial from ninety to sixty days, on the ground that "[n]o evidence has been presented at anytime in our hearings [on the Bail Reform Act] that the ninety day Speedy Trial Act limit has not worked perfectly well to protect against lengthy incarceration." 130 Cong.Rec. S938, S945 (Daily ed. Feb. 3, 1984) (statement of Sen. Grassley). Two of the detention provision's staunchest supporters, in fact, assumed that such detention would not exceed ninety days. In rejecting the amendment, Senator Thurmond called ninety days a "worst case limit," *id.* at S941, and Senator Laxalt characterized the ninety-day limit as an "upper bound,"

*id.* at S943, beyond which pretrial incarceration would not extend. This history supports the conclusion that Congress did not envision pretrial detention ever extending beyond a few months.

Nevertheless, extended imprisonment has become the rule rather than the exception whenever pretrial detention is used in complex, multi-count, multi-defendant actions. The Senate "did not fully appreciate just how long pretrial detention might last under the exclusions of the Speedy Trial Act." *United States v. Melendez-Carrion,* 790 F.2d at 996. Excludable time provisions of the Speedy Trial Act often push back the trial for months, and even years, despite the possible detention of defendants. The Speedy Trial Act lists nine major categories of reason for excludable time, with numerous sub-categories specifying the various exigencies that might necessitate delay. *See* 18 U.S.C. § 3161(h). The Standard Form Order of Excludable Delay for this district enumerates fifty-one specific categories of excludable delay.

In the light of modern criminal practice in a large urban setting, particularly in complex multi-defendant cases, these substantial excludable delays are essential and unavoidable. The suggestion that trial courts have been unnecessarily "leisurely" in bringing complex cases to trial, *see United States v. Salerno,* 794 F.2d 64, 79 n. 2 (2d Cir.1986) (Feinberg, C.J., dissenting), is belied by the practical realities of complex criminal cases. Trial judges in this and other districts are hardly anxious to prolong these cases needlessly. Trial courts move as expeditiously as possible given the inevitable exigencies of such cases. In fact, most of these cases have been tried with remarkable efficiency, given the number of defendants and attorneys, the complexity of the legal issues, the sheer volume and unmanageability of discovery materials, and the extensive and complex pretrial motions that must be resolved before a fair trial may commence.

The instant case illustrates the problems which preclude bringing such litigation to a rapid close. There are seventeen counts in the indictment, including a complex RICO count. There are sixteen defendants, each of whom is indicted under different combinations of the various counts. *See* 18 U.S.C. § 3161(h)(8)(B)(ii) (number of defendants and nature of prosecution pertinent in determining whether case is so complex that it warrants an "ends of justice" continuance under section 3161(h)(8)(A)). There are over one thousand hours of wiretap recordings in addition to other evidence that must be studied and evaluated by each of the defendants and their counsel. Numerous motions have been and will be filed. It is extraordinarily difficult to set a trial date at which all counsel can appear, because many of them are at trials in other state and federal cases. As this court previously noted:

> A hard-nosed unrelenting attitude by the trial judge that attorneys must be retained who will be available when he is ready does serious damage to the right to counsel of defendant's choice. Severances are possible but they exacerbate the situation because instead of tying up the trial judge for four months, he becomes unavailable for other trials for a much longer period.

*United States v. Colombo,* 616 F.Supp. 780, 787 (E.D.N.Y.), *rev'd on other grounds,* 777 F.2d 96 (2d Cir.1985).

In addition, the court must consider the time defendants will likely spend in detention during the trial. In this sort of case, the trial is likely to go on for many months. One similar case in the Southern District recently entered its second year of trial shortly after the government rested its case. *United States v. Badalamenti,* No. 84–CR–236 (S.D.N.Y.). The Speedy Trial Act does not, of course, deal with the length of the trial itself, yet pretrial detainees are incarcerated for this period as well. In the Eastern District of New York, the *median* time interval between filing and disposition in a criminal case tried by jury was 6.3 months for the year ending June 30, 1986. Annual Report of the Director of the Administrative Office of the United States Courts, App. I, at 62 (June 30, 1986). This figure is significantly higher in complex cases.

These unalterable facts about the nature of complex criminal litigation were not considered by Congress when it enacted the first pretrial detention provision without a time limit. The trial court must account, as Congress did not, for the extreme prolongation of detention that has resulted from Congress' misplaced faith in the Speedy Trial Act.

The Bail Reform Act of 1984 has served as a mandate to incarcerate defendants prior to conviction in unprecedented numbers and for unprecedented periods of confinement, despite the understanding of the statute's supporters that it would "not vastly increase the number of defendants hold pending trial." 130 Cong.Rec. S943 (daily ed. Feb. 3, 1984) (statement of Sen. Laxalt). For the year ending June 30, 1985, 307 federal defendants nationwide had been incarcerated for over 151 days prior to trial, dismissal, or guilty plea. Annual Report of the Director of the Administrative Office of U.S. Courts, App. 1, Table D–13 (June 30, 1985).

The length of pretrial detention in some recent cases is unprecedented in our history. The defendant in *United States v. Colombo*, 616 F.Supp. 780 (E.D.N.Y.), *rev'd*, 777 F.2d 96 (2d Cir.1985), for instance, was incarcerated on April 29, 1985. He pled guilty on June 9, 1986, after serving well over a year under pretrial detention. He was not sentenced until October 30, 1986, after being incarcerated under the Bail Reform Act for over eighteen months.

These long periods of pretrial detention are anathema to our basic notions of due process. *See United States v. Accetturo*, 783 F.2d 382, 396 (3d Cir.1986) (Sloviter, J. dissenting). That a defendant is ultimately found guilty does not, of course, excuse the violation of his constitutional rights prior to conviction. Lengthy pretrial detention can be justified only when countervailing interests are extraordinarily weighty and compelling, and when there is no alternative to detention that will vindicate those interests in a less restrictive manner.

### 6. *Need for Balancing, with Emphasis on Other Factors Emphasized by Court of Appeals*

Previous cases have suggested two other factors which should be considered in evaluating whether the length of detention violates due process rights. The first is who is responsible for the delay in trial and whether such delay is reasonable. "Relevant factors [in due process judgments] might include ... whether the defendant or the government has added needlessly to [the] complexity or has egregiously delayed the proceedings." *United States v. Salerno*, 794 F.2d 64, 79 (2d Cir.) (Feinberg, C.J., dissenting on other grounds), *cert. grant-*

*ed,* —— U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986). *Accord, United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir.1986) (judgments should reflect "whether the strategy of one side or the other has added needlessly to that complexity").

The government argued in *United States v. Berrios-Berrios*, 791 F.2d 246 (2d Cir. 1986), that the court need not reach the due process issue where the defendants themselves had activated the Speedy Trial Act exceptions through numerous motions and special requests. 791 F.2d at 252; *see also United States v. Zannino*, 798 F.2d 544, 548 (1st Cir.1986) (detention upheld where government had "steadfastly pressed for trial throughout the period of ... detention," and where trial had been delayed at single defendant's insistence); *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir.1986) (delays caused by defendant "would not raise a problem" for extension of 90–day limit on incarceration in § 3164). But the Second Circuit rejected this argument as "flawed," ruling that "the *reason* for the government's delay in bringing the case to trial is only one factor to be considered." 791 F.2d at 252 (emphasis in original).

No one in the instant case has needlessly postponed trial or delayed the proceedings. Severance may not be reasonable given the government's theory that one RICO conspiracy ties together all the defendants. The court must consider "the extent to which the Government bears a significant responsibility for the duration of ... detention." *United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir.1986). Because of the inevitable complexity of the government's legal theory and the volume of evidence involved, it "suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." *Id.* at 342–43.

The second extenuating factor to be considered, uncertainty of delay, was first addressed by the Second Circuit in *United States v. Colombo*, 777 F.2d 96 (2d Cir. 1985). In *Colombo*, the appellate court declined to consider the due process challenge because a trial date had not yet been set. The "substantial length" of Colombo's

detention was characterized as a "speculative matter," 777 F.2d at 101, despite the fact that he had already been incarcerated for seven months at the time of the opinion, with no·trial likely in the immediate future. *Colombo* has been followed in this respect by other circuits, one of which reasoned that the "demand for stronger due process protections for detainees awaiting distant trials is thus better met farther down the procedural road," rather than when "the procedural form of the ultimate trial is still inchoate." *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986); *see also United States v. Portes,* 786 F.2d 758, 768 (7th Cir.1985) ("premature").

But, as two appellate judges have observed, this is a rather puzzling consideration. A court should not have to know when trial will begin in order to reach the merits of the due process claim. While some of a defendant's detention time may be speculative, much of it will be highly probable, and a certain part (i.e., that which has already past) will be certain. Due process claims can be evaluated as to those certain and probable periods. Eight months in prison at the time of the appeal, for instance, "is more than enough to bring the constitutional issue before [the court]." *United States v. Melendez-Carrion,* 790 F.2d 984, 1006 (2d Cir.1986) (Feinberg, C.J., concurring). As Judge Sloviter has noted, to decide that the due process issue for detainees awaiting distant trials is "better met further down the procedural road," when they have already been incarcerated for several months, "is to deny effective consideration of that issue at any time." *United States v. Accetturo,* 783 F.2d 382, 392 (3d Cir.1986) (Sloviter, J., dissenting). The uncertainty also adds to the strains on the defendants and their families.

Indeterminacy of duration is better met following the procedure approved by the First Circuit. It allowed the continuance of one defendant's detention *on the condition* that it be only for a "short, discrete, and finite additional period...." *United States v. Zannino,* 798 F.2d 544, 549 (1st Cir.1986). The court there explicitly stated that the result would be different were the detention to be in effect "on an open-ended basis pending some future determination [of trial date] to be made at an uncertain time." *Id.* This practice is sensible administratively. The indeterminacy of duration

should weigh in favor of release, rather than against it.

In any event, indeterminacy is not a factor here. This court has set a trial date of March 9, 1987. The defendants will have been incarcerated for over eight months on that date if release is not now ordered. They have been imprisoned for over four months. The trial will be extended.

### 7. *Need for Balancing, with Emphasis on Statutory Considerations*

■■ The Bail Reform Act of 1984 explicitly requires the following factors to be considered in determining whether to incarcerate a defendant before trial: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendants in the principal case; (3) the history and characteristics of the defendants, including their character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to the witness that would be posed by the person's release. 18 U.S.C. § 3142(g). The court is "expected to weigh all the factors in the case before making its decision." Senate Report at 24–25, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3207–08. Abuses in pretrial detention can be kept in check only by a sensitive review, and reconsideration when necessary, of individual incarcerations.

■■ Where pretrial detention must be imposed, it should be used sparingly, in the least restrictive manner feasible consistent with the limited purposes of the detention. Attorney General Mitchell concurred that any bail provisions "must seek to minimize, as far as practicable, the burdens of pretrial detention." Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention,* 55 U.Va.L.Rev. 1223, 1235 (1969). Unfortunately, facilities are not available to hold non-convicted detainees under conditions less restrictive and less punitive in nature than those encountered in federal prisons. Thus we cannot measurably alter the *conditions* of pretrial detention consistent with its limited purpose. But we can alter the length of incarceration.

## III. APPLYING LAW TO THE FACTS

Weighing in favor of continued detention are the following: the crimes charged are serious and involve threats of violence; the defendants probably are violent men; one of them has a criminal record; and a threat has clearly been made against "X." Racketeering organizations such as those alleged in the indictment are capable of, and habituated to, killing and terrorizing prospective witnesses. "X," the witness, is actually in fear.

Weighing against continued detention are the following: it is no more than probable that the defendants are responsible for the threats to the witness; the defendants have good roots in the community and in their family and employment backgrounds; it would be against the defendants' interests if any harm came to "X," since his recorded testimony would probably be more damaging than his testimony in open court; the danger to the witness is not appreciably reduced by incarceration of the defendants; the witness may be profiting financially from the defendants' incarceration; the difficulties in preparing for trial during incarceration; the physical and emotional problems of incarceration and the burdens on the defendants' families; and, finally, the very long period of pretrial incarceration required.

██ The balance is clearly in favor of release now.

## IV. ADDITIONAL PROTECTIVE BAIL CONDITIONS

The court has general powers to fix and modify bail conditions to protect the witness. 18 U.S.C. § 3142(a)(2)(c). The following conditions are added in addition to a secured personal recognizance bond in the amount of $100,000.00 per defendant (*see* 18 U.S.C. § 3142(a)(2)(c)): Anthony Vitta and Salvatore Migliorisi shall not associate, engage in business together, or communicate with each other or with any other named defendants prior to trial except insofar as their lawyers determine such communication is necessary to prepare their defenses, and then only in the company of their lawyers. They may not appear at their former place of employment, "X" 's business. They may not commit any crimes. They may not communicate with the witness, "X," directly or indirectly, or threaten him or anyone named in the indictment or any other person, directly or indirectly. They shall report by telephone daily to Pretrial Services. They shall surrender their passports. They shall not leave the Eastern and Southern Districts of New York.

This decision is stayed for five days to permit an application for a further stay to the Court of Appeals.

So ordered.